UNITED STATES of America
v.
Louis HOGAN, Appellant.
No. 11715.

United States Court of Appeals
Third Circuit.
Argued Feb. 20, 1956.
Decided May 2, 1956.

9. June 25, 1948, c. 646, 62 Stat. 955.

A. Morris Ginsburg, Pittsburgh, Pa., for appellant.

Thomas J. Shannon, Asst. U. S. Atty., Pittsburgh, Pa. (D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before MARIS, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Defendant-appellant Louis Hogan was tried in the United States District Court for the Western District of Pennsylvania and was convicted of having unlawfully sold, dispensed, and distributed to one Edward Lee Perkins fifty-seven grains of heroin in violation of Section 2553 (a) of Title 26 of the United States Code. He was sentenced to thirty months imprisonment. A motion for a new trial, which raised the same questions that are raised on this appeal, was denied. In our view of the case, it is only necessary to consider whether the defense was prejudicially restricted in its cross examination of two important prosecution witnesses, Edward Lee Perkins and John Whit Martin.

The direct testimony of both Perkins and Martin supported the charge in the indictment that the defendant had illegally sold narcotics to Perkins. The defendant contended that he was not the individual from whom the narcotics had been purchased.

Both of these witnesses, prior to their appearance against the defendant, had pleaded guilty in the district court for the Western District of Pennsylvania to a charge of illegal possession of the same narcotics which they said had been purchased from the defendant, but the imposition of sentence had been deferred. Also Perkins, who was a second offender under the Boggs Act, which provides for increased sentences for second and subsequent offenders, 21 U.S.C.A. § 174, and whose bail had been $2500, was released on his own recognizance, although the government had requested a reduction to $500.

The defense attempted to establish by cross examination of the two witnesses that their sentencing had been postponed and Perkins had been released on his own recognizance because at the time of their guilty pleas they had agreed to testify against the defendant, and both believed or hoped that they would later receive preferential treatment in return for their testimony against the defendant. The court refused to permit cross examination on the above matters.

It is not disputed that the permissible extent of cross examination is within the sound discretion of the trial court. But, as in all matters which are discretionary at the trial level, this court must intervene when abuse is shown, and we think defendant's contentions in this case are meritorious. See United States v. Fontana, 3 Cir., 1956, 231 F.2d 807.

Perkins and Martin were the key government witnesses. In attempting to impeach the credibility of such highly important witnesses, the defense was aiming at the heart of the government's case. The proffered line of cross examination might have produced results which would have made a difference in the jury's appraisal of these witnesses. Both were yet to be sentenced, and expectations of leniency may have produced the impetus for their testimony on direct examination. We do not, of course, know whether such was the case, but the de-

fense was entitled to an opportunity to show that it was. See Gordon v. United States, 1953, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447; Alford v. United States, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L. Ed. 624.

The trial court in its opinion and the government attorney on this appeal recognized that greater latitude should have been permitted in cross examination, but it is argued that the defendant was not prejudiced because of the instructions to the jury. The jury was told:

> "Members of the jury, I also wish to caution you with respect to the testimony of Messrs. Martin and Perkins. You are not merely to scrutinize it, but look at it from every angle. Martin and Perkins have entered a plea before another judge of this court to the charge 'possession of narcotics' and they have not yet been sentenced, and I say, therefore, that you should consider the testimony of these witnesses carefully. You are to test the question of the truth or falsity of their testimony by every test which occurs to you that can be applied to it. * * * Do not throw this testimony out because it comes from a tainted source but consider it, and while you are considering it remember from whom and what kind of witnesses the testimony comes."

But this instruction to the jury was not an adequate substitute for effective cross examination. The importance of cross examination here is that it enables the jury to determine what effect, if any, the postponing of sentence and the release on recognizance had upon the minds and conduct of the witnesses. See Gordon v. United States, supra, 344 U.S. at page 422, 73 S.Ct. 369. Merely informing the jury that the witnesses were yet to be sentenced does not bare for the jury's appraisal the extent to which the witnesses may have been motivated by expectations of leniency.

Other questions raised need not be considered.

For the reason stated, the judgment of conviction will be reversed and the cause remanded for further proceedings not inconsistent herewith.