UNITED STATES of America,
Plaintiff,

v.

William Lee CARR, Defendant.

UNITED STATES of America,
Plaintiff,

v.

Jose Terrones RIOS, Defendant.

UNITED STATES of America,
Plaintiff,

v.

Amos BLACK et al., Defendants.

Crim. Nos. 25111, 26019, 26039.

United States District Court
S. D. California,
Central Division.

Aug. 23, 1957.

No. 25111.

Peter J. Hughes, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

D. V. Hanneken, Los Angeles, Cal., for defendant.

No. 26019.

Leila Bulgrin, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Harvey M. Grossman, Los Angeles, Cal., for defendant.

No. 26039.

Robert J. Jensen, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Edward J. Skelly, North Hollywood, Cal., Welford R. Wilson, Los Angeles, Cal., for defendants.

HALL, District Judge.

Each of the three above cases are prosecutions for violations of the Federal Narcotic Laws. In each of them a motion was made, prior to trial, for inspection of certain Government records. Each motion was denied from the Bench, but, in view of the fact that numerous similar motions are constantly being made, it seems wise to formalize my rulings, in order that the Bar may know my position during the remainder of the time I will handle the Criminal Calendar.

In the Carr case, No. 25,111–Cr., the defendant sought to inspect "all reports, written or orally made, as recorded by the United States Attorney or by any agency of the United States, touching the events and activities as to which said plaintiff will produce testimony at the trial of the above entitled action and of said defendant."

In the Rios case, No. 26,019–Cr., the defendant demanded for inspection "the grand jury proceedings in the above-entitled cause."

In the Black case, No. 26,039–Cr., the defendant demanded for inspection "The records of testimony of Government witnesses before the Federal Grand Jury that resulted in the present indictment; to inspect the records, written and oral, of the arresting and investigation officers in this matter made to their superior; to inspect the reports made by all officers who have made reports to superior officers concerning this matter."

All of the demands were based on the Jencks case, Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

All of the motions misconceive the Jencks case.

Although there is much dicta in the opinion, the *decision* in that case is a very narrow one.

The legal basis of the decision was the principle of hornbook law on one ground of impeachment of a witness' testimony, so long and well established that it needs no citation of authority, viz.: that *when a witness is called to the stand and testifies, (and not before), the opposing counsel is entitled to confront him, on cross-examination, with any prior inconsistent statement, and to ask him if he did, in fact, make such statement, and also to ask him which statement is true.*

The decision does not give an unlimited hunting license to the defendant for the Government's witnesses, or an unlimited right to prospect, at will, among such evidence as the Government might have obtained in connection with a general, or limited and specific, investigation by the Government of the possible violation of any law or class of laws.

This is clear from a careful reading of the opinion. It is stated (353 U.S. at pages 666–667, 77 S.Ct. at page 1012):

"The necessary essentials of a foundation, emphasized in that opinion [Gordon v. U. S., 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447], and present here, are that '[t]he demand was for production of * * * *specific documents, and did not propose any broad or blind fishing expedition* [1] among documents possessed by the Government on the chance that something impeaching might turn up. *Nor was this a demand for statements taken from persons or informants not offered as witnesses.'* 344 U.S. at page 419, 73 S.Ct. at page 373. *We reaffirm and reemphasize these essentials.* 'For production purposes it need only appear that the evidence is relevant, competent, and outside of any exclusionary rule * * *.' 344 U.S. at page 420, 73 S.Ct. at page 373. *The occasion for determining a conflict cannot arise until after the witness has testified* * * *. We now hold that the petitioner was entitled to an order directing the Government to produce for inspection *all reports of Matusow and Ford in its possession, written and, when orally made, as recorded by the F. B. I., touching the events and activities as to which they testified at the trial.*" (Italics supplied.)

■ Not until a witness is called and testifies on the witness stand, and is shown by interrogation to have made a prior statement, is the Government required to produce that statement. They are then required to produce only the exact words which that witness has used. That is to say, if he has made a signed written statement, the defendant is entitled to see it; if he has made a statement which was dictated to a stenographer and he admits that it was his statement, the defendant is entitled to see it; or if the statement was recorded on any kind of recording apparatus, the defendant is entitled to hear it.

■ If a witness is called to the stand and is shown to have testified before the grand jury, then the defendant is entitled to see that witness' testimony before the grand jury *if it has been recorded.* But, the Government is under no obligation to record a witness' testimony before a Federal grand jury.

■ The defendant is entitled to see *only* such statements or testimony or portions thereof "touching the events and activities as to which" the witness "testified at the trial." This is true whether the witness is an investigative agent or not.

■ The defendant is not entitled to see a report, or testimony, or statement, or any portion thereof, touching events, activities or persons concerning which the witness has not testified. If there is set forth what some other person has told the witness, such matter is hearsay and is not admissible in evidence, and the defendant is not entitled to see such portion unless and until a factual dispute properly and legally arises as to whether or not such statements were in fact made. Such an occasion is rare.

■ Moreover, before any statement or report is submitted to the defendant for his inspection, the Government is entitled to have it examined by the Court to determine whether or not it is material that can be used for impeachment,

---

1. Emphasis supplied by the Supreme Court.

or whether it is in truth and in fact a statement of the witness who is on the stand, and whether or not it actually relates to the matters touched in the witness' testimony, or contains matters which are entirely irrelevant, immaterial and incompetent insofar as the then instant proceedings or the witnesses' testimony are concerned.

While the Supreme Court purported to disapprove the practice of producing documents for the inspection of the Judge before being shown to the accused, they, nevertheless, in the very next sentence said that "relevancy and materiality for the purposes of production and inspection, with a view to use on cross-examination, *are established when the reports are shown to relate to the testimony of the witness.*" (Italics supplied.)

The word "shown" is not used here in the sense of merely "exhibiting" or "displaying" for reading purposes, but in the legal sense of establishing, as a fact, that the reports do relate to the testimony of the witness.

To whose satisfaction must "relevancy and materiality", be "shown"? Or, more properly, who is to decide when it is shown or established that the reports do, in fact, relate to the testimony of the witness, or the case on trial, or are material to either? Surely *not* the Government, because that would make the United States—one party only to the lawsuit—the sole judge as to whether or not the reports are relevant or material.

And, just as surely, *not* the defendant for his one-sided decision, who, before he could make the decision, would require disclosure of everything in the Government's file. The defendant then having had access, there would be no reason for anybody to determine if the "evidence is relevant, competent, and outside the exclusionary rule."

 The law gives a defendant the protection of the Fifth Amendment: He need say nothing or disclose nothing to the prosecution. He has the presumption of innocence and he must be proven guilty beyond a reasonable doubt. What a dream for criminals it would be, in addition to those protections, for them to have all the records of law enforcement agencies to paw through in the hope that something might turn up, or to warn their friends, or to influence or frighten witnesses, or to suppress evidence which has been obtained by the Government, in many instances at the risk of an officer's life.

The realities of life and the horrible facts of crime, as seen from many years at the Bar and on the Bench, have demonstrated that the defense of a criminal case is not exactly a detached and professorial search for truth. They likewise compel the conclusion that to give such access to the defendant would place all law enforcement efforts, whether on the part of citizens or officers, at the peril and at the mercy of actual or alleged criminals.

And, while there is no evidence in these particular cases of violence or threatened violence to, or harassment of, witnesses, or destruction of evidence, it would be sophomoric blindness to suppose that people faced with long-term sentences [2]—even up to life imprisonment—would not ever harass a witness or attempt to frighten him, or even murder him, or destroy evidence or the means of attaining it.

2. The Rios case has since been tried: the defendant found guilty and sentenced to 20 years imprisonment. It involved over two ounces of heroin—more than 1,000 "fixes" or "pops." The Government called Los Angeles Police Officers at the trial, and upon demand of defendant, their report to the Federal Narcotic Bureau was produced for inspection of defendant's counsel after the Court had examined it and excised the officer's statements therein as to what other possible witnesses had said to him.

The decision in the Jencks case, supra, does not mention, and certainly does not abrogate the Federal Rules of Criminal Procedure, 18 U.S.C.—which were promulgated by the Supreme Court—and which are supposed to govern *every* criminal case, and which provide for *limited* discovery by the defendant, *on motion, after hearing, by decision of the Court.*[3]

■ It is the historic function of the Judge to make decisions as to whether or not a document, or any other evidence, is relevant, or material, or competent.

And I cannot believe that the Supreme Court intended, by dicta, to completely destroy and change the processes developed at such great cost over so many years whereby an independent third person, viz.: a Judge, instead of either party to the lawsuit, makes the decision concerning such matters.

Of course it is the duty of the prosecution to see that justice is done. But justice comprehends not only the protection of the rights of a criminal or an accused person, but also the protection of society from criminals.[4]

These conclusions are not only consistent with the decision of the Supreme Court in the Jencks case, supra, but they conform to the rules of evidence concerning impeachment of witnesses which have been established over many hundreds of years of trial and error, and I do not think the Supreme Court intended, by dicta, to change those rules or to nullify Rule 16 of the Federal Rules of Criminal Procedure.

3. "Rule 16. Discovery and Inspection. Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just."

4. According to the Federal Bureau of Investigation, the cost of crime in the United States in 1956 was estimated at Twenty Billion Dollars, and there were almost 7,000 murders, of which almost 600 are unsolved. In Los Angeles City alone there were 104 murders in 1956—many of them senseless and brutal and multiple. Of them, 12 have not been solved.