Richard G. RISER, Appellant,

v.

Harley O. TEETS, Warden of the California State Prison at San Quentin, Appellee.

No. 15639.

United States Court of Appeals
Ninth Circuit.
March 17, 1958.

Rehearing Denied April 22, 1958.

Pope, Circuit Judge, dissented.

George T. Davis, San Francisco, Cal., Carl B. Shapiro, Fairfax, Cal., for appellant.

Edmund G. Brown, Atty. Gen., Clarence A. Linn, Asst. Atty. Gen., Arlo E. Smith, Deputy Atty. Gen., State of California, for appellee.

Before HEALY, ORR and POPE, Circuit Judges

HEALY, Circuit Judge.

Appellant was tried and convicted in a California court of the murder of two people—a man and his wife—and was sentenced to death. His defense was an alibi. Pursuant to a state statute, Pen. Code, § 1239(b) he was accorded an automatic appeal to the California Supreme Court, which tribunal affirmed the conviction. People v. Riser, 47 Cal.2d 566, 305 P.2d 1, 15. Certiorari was denied, 353 U.S. 930, 77 S.Ct. 721, 1 L.Ed.2d 724. Thereafter appellant petitioned the court below for the writ of habeas corpus, asserting that he had been denied due process of law and the equal protection of the laws. The district court (Judge Murphy sitting) issued an order staying appellant's execution until final disposition could be made of the petition; and after a hearing the application for the writ was denied. The matter is now before this court on appeal.

The evidence in the case is set out in exhaustive detail in the California court's opinion on the automatic appeal, and no more of it will be touched upon here than is essential to an understanding of the points raised.

Prior to the trial counsel for appellant had asked that there be turned over to them by the authorities, for impeachment purposes, copies of statements allegedly made by the two eyewitnesses to the killing, describing the murderer. These requests were denied by the trial judge. Other demands for the production of evidence along the same line were made during the course of the trial and were denied. The State Supreme Court held that the rulings constituted error. However, it decided that the error was not prejudicial in that there was no reasonable probability that the jury would have reached a different verdict had the defendant been allowed to obtain and introduce the statements in evidence.

The basis of this holding lay in the fact that fingerprints of appellant were found on a bottle and on a glass at the bar where the murders were committed. Also, the finding of a certain type of hand-

cast bullets in the bodies of the victims was held to point strongly to appellant as the slayer. "Fingerprint evidence," said the court, "is the strongest evidence of identity, and is ordinarily sufficient alone to identify the defendant." The court added that in this case there was the further evidence afforded by the presence of the hand-cast bullets.

■■■ Article 6, § 4½, of the Constitution of the State of California reads in material part:

"No judgment shall be set aside, or [no] new trial granted, in any case * * * for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

This provision applies in both civil and criminal cases.

Appellant relies heavily on Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. The opinion in that case contains no intimation that the procedural requirement laid down in it is to be taken as one of due process under the Constitution of the United States. The Court went no further than to say (353 U.S. at page 668, 77 S.Ct. at page 1013) that the standard announced is one for the administration of criminal justice in the federal courts.

The decision of the court below is affirmed.

POPE, Circuit Judge (dissenting).

As appears from the decision of the California court, the determination of appellant's guilt or innocence turned upon the question whether he was properly identified as the man who did the shooting. This was the principal question for determination by the jury. The California decision also shows that the witnesses who identified appellant as the man who did the killing made statements in writing immediately after the homicides. That these statements were in existence, and in the possession of the prosecution or the police, and that they were inconsistent with the witnesses' testimony was never denied.[1] Had these inconsistent statements been made available to the defendants they would have been important evidence in the case. As stated in respect to similar evidence in Gordon v. United States, 344 U.S. 414, 421, 73 S.Ct. 369, 374, 97 L.Ed. 447: "The alleged contradictions to this witness' testimony relate not to collateral matters but to the very incrimination of petitioners." Although the California court expressed the view that it was error to deny this defendant those statements,[2] yet it held the error was not prejudicial because of the other evidence tending to connect defendant with the crime since it was in the view of the court "not reasonably probable" that the jury would have reached any other conclusion than its verdict of guilty even if the statements had been produced.

As stated by Mr. Justice Frankfurter in Malinski v. People of State of New York, 324 U.S. 401, 412, 65 S.Ct. 781, 787, 89 L.Ed. 1029, "The Constitution left the domain of criminal justice to the States." Generally speaking the California court was free to decide its own case in its own way.[3] But when it appears that a person tried in a state court has been denied a right which he has under the

1. This is the way the California court puts it. The complaint in the district court alleged this to be the fact, and for the purposes of this review we must accept that.

2. Said the court: "We are at a loss to understand how the court could have reached this conclusion without even seeing the statements."

3. Although it has no significance here, it would appear from Gordon v. United States, supra, and Roviaro v. United States, 353 U.S. 53, 63, 77 S.Ct. 623, 629, 1 L.Ed.2d 639, that the United States Supreme Court would not be inclined to agree with the California Supreme Court in holding such an error a harmless one. In the Roviaro case the error was refusal to furnish the identity of an informer. Reversal was required because of the mere fact that the informer's testimony *"might* have been helpful to the defense." (Emphasis mine.)

federal Constitution, then the effect of that denial, that is to say whether the denial voids his conviction, is a federal question upon which there is no uncertainty under the controlling decisions. I proceed to inquire whether there was here a denial of such a federal right.

The requirements of the due process clause of the Fourteenth Amendment have not always been held to be coterminous with those of the Sixth Amendment. Betts v. Brady, 316 U.S. 455, 461, 62 S.Ct. 1252, 86 L.Ed. 1595. On the other hand, many of the rights and privileges listed in the first eight Amendments, are, because the Fourteenth Amendment expresses a demand for those civilized standards of judicial procedure which are within our concept of ordered liberty, deemed to be essential to the due process required of the States by that Amendment. Thus in a capital case, an accused in a state court is entitled to the assistance of counsel, not because of the provision of the Sixth Amendment to that effect but because "there are certain immutable principles of justice which inhere in the very idea of free government which no member of the union may disregard." Powell v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158. Another concept of the Sixth Amendment which has been held to be a requirement of due process under the Fourteenth Amendment is the right of an accused to a public trial. In re Oliver, 333 U.S. 257, 266–273, 68 S.Ct. 499, 92 L.Ed. 682. The several opinions in that case and in State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422, discuss at length the relation of some of the fundamental concepts of the Bill of Rights to the due process clause of the Fourteenth Amendment.

This brings me to my point: that a right of an accused to have compulsory process for obtaining witnesses in his favor is also a right implicit in the concept of ordered liberty which is imposed upon the states by the Fourteenth Amendment. And this requirement, like that of the Sixth Amendment that "In

all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining Witnesses in his favor * * *." extends to documentary as well as oral evidence. United States v. Schneiderman, D.C., 106 F.Supp. 731, 735; Wilson v. United States, 221 U.S. 361, 372, 31 S.Ct. 538, 55 L.Ed. 771. In my view, the vacating of the subpoena for the production of the statements of these witnesses was a plain denial of this due process.

The net result here was that the case went to the jury on some, but not all of the evidence that should have been available. Suppose the state limited a defendant to compulsory process for the production of but two witnesses. He seeks to subpoena a third, but this is not allowed. It is a bit difficult for me to see how such a trial would measure up to constitutional standards. It appears to me that the denial in this case of compulsory process to procure the contradictory statements is just as plainly a denial of due process.

It is my interpretation of the decisions of the Supreme Court that it will not compromise with a denial of a constitutional right. Thus it is inconceivable to me that that Court would listen to an argument that although the accused had been improperly denied his right to assistance of counsel, yet the evidence of the defendant's guilt was so overwhelming that counsel could not have done him any good; or, on the other hand, that the record showed that the defendant did such a good job defending himself that denial of counsel was harmless error. Suppose it were made to appear that the prosecution had knowingly made use of perjured testimony. Can it be argued to that court that the perjured testimony was so discredited that the use of it was harmless error and there was no "reasonable probability that the jury would have reached a different verdict" had it not been received?

We are not left in doubt upon this subject for the Supreme Court has made it plain that if a constitutional right be denied, it is wholly immaterial what other

proof there may be in the record, no matter how overwhelming, that the accused was guilty and would in any event have probably been found to be so. Such was the holding in Malinski v. People of State of New York, supra. That was a case in which two confessions made by the accused were involved. One of these was coerced. The court held that the coerced confession was employed to obtain a conviction. It was contended that since the jury under proper instructions could hold that the other confession was not coerced, and since the first confession had been introduced only as it had a bearing on whether the second one was coerced, the use of the first confession was harmless error. Accordingly the New York court affirmed the conviction under its harmless error rule, 292 N.Y. 360, 55 N.E.2d 353, and the minority of the Supreme Court were of a similar view. The majority of the Court however declined to consider any such approach. They held with respect to the coerced confession: "If it is introduced at the trial, the judgment of conviction will be set aside even though the evidence apart from the confession might have been sufficient to sustain the jury's verdict." [342 U.S. 401, 65 S.Ct. 783.]

This refusal to compromise with denial of constitutional right, or to construe such denial as harmless error, goes back to Bram v. United States, 168 U.S. 532, 540–542, 18 S.Ct. 183, 42 L.Ed. 568. Malinski was applying the rule stated in Lyons v. State of Oklahoma, 322 U.S. 596, 597, (footnote 1) 64 S.Ct. 1208, 1210, 88 L.Ed. 1481 as follows: "Whether or not the other evidence in the record is sufficient to justify the general verdict of guilty is not necessary to consider. The confession was introduced over defendant's objection. If such admission of this confession denied a constitutional

right to defendant the error requires reversal." [4]

That the Court will forthwith strike down convictions obtained through such denials of constitutional rights, no matter what may be the other evidence of guilt, was again demonstrated in Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 829, 1 L.Ed.2d 876. This was the case of the defendants who were charged with assisting and harboring certain fugitives from justice. The defendants were arrested at a secluded cabin near a remote village in California. The Government agents searched the cabin and seized its entire contents and hauled them off to San Francisco. This was an unreasonable search and seizure, "beyond the sanction of any of our cases." As disclosed by the dissenting opinion, only a fragmentary part of the items seized was admitted in evidence. The opinion of the Court, as well as the decision (9 Cir., 231 F.2d 155) which was reversed, make it plain that there was an abundance of evidence of guilt aside from the items seized and admitted. The two justices who dissented suggested that the effect of the illegal seizure should be governed by the rule of harmless error since there was ample evidence of guilt otherwise. The subject of harmless error was not even mentioned in the Court's opinion. Obviously it considered such a question irrelevant.

When a defendant has been denied due process, his guilt or innocence is irrelevant. He has not been tried by civilized standards, and cannot be punished until he has been. I am therefore of the view that the plain denial to this appellant of the due process to which he was entitled under the Fourteenth Amendment, namely, his right to compulsory process, makes his conviction void under the rule thus established.

4. This rule has been repeated in Brown v. Allen, 344 U.S. 443, 475, 73 S.Ct. 397, 97 L.Ed. 469; Stroble v. State of California, 343 U.S. 181, 190, 72 S.Ct. 599, 96 L.Ed. 872; and Gallegos v. State of Nebraska, 342 U.S. 55, 63, 72 S.Ct. 141, 96 L.Ed. 86. There is some language in

Stein v. People of State of New York, 346 U.S. 156, 188–194, 73 S.Ct. 1077, 97 L.Ed. 1522, which may indicate to the contrary; but the authority of that case appears doubtful since the decision in Leyra v. Denno, 347 U.S. 556, 74 S. Ct. 716, 98 L.Ed. 948.