**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harry E. ROHALLA, Defendant-Appellant.**

**No. 15622.**

United States Court of Appeals Seventh Circuit.

Nov. 10, 1966.

Rehearing Denied Dec. 9, 1966.

Julius Lucius Echeles, Howard W. Minn, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Robert A. Galbraith, Asst. U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Lawrence E. Morrissey, Asst. U. S. Attys., of counsel.

Before SCHNACKENBERG, SWYGERT and CUMMINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Harry E. Rohalla, defendant, appeals from a judgment of conviction and sentence in the district court, after a jury trial, on an indictment charging him with receiving and concealing a 1964 Chevrolet automobile which was moved in interstate commerce from Hammond, Indiana to Chicago, Illinois, knowing it to have been stolen, in violation of Title 18 U.S.C. § 2313.

Among twenty-eight alleged errors assigned by defendant in his motion for a new trial was the following:

"26. The Court erred in permitting into evidence the testimony of Ralph E. Williams, an FBI agent regarding something that he read out of a book published by the Department of Motor Vehicles of the Secretary of State's Office in the State of Illinois in 1964 which book was not in Court but which book was available according to the testimony of said witness for the Government."

Richard Eugene Storey, also known as Thomas P. Sheehan, Chicago, an inmate of an Illinois state penitentiary, having been convicted of burglary and forgery, testified for the government, that he met defendant Rohalla in Chicago and introduced himself to Walter Palka whom he asked about getting "some fraudulent checks" to cash, intending to cash a check in Indiana and there secure a car from a rental agency in order to have transportation as he cashed said checks.

According to witness Storey, he went to Indiana and rented a 1964 Chevrolet automobile under the name of Thomas P. Sheehan, giving as security a fraudulent $100 check; one Donald Morgan and he cashed more checks in Indiana and then "came back to Chicago" at 6 P.M. and met defendant and Palka at 102nd Street

and Indianapolis Boulevard, whereupon he gave some money to Palka and received from him similar checks.

The rental agreement for the Chevrolet signed by Storey and the check he gave for it, bearing on the back thereof the address on his fraudulent driver's license, "2924 North Damen Avenue, Chicago," were introduced in evidence. Also, according to Storey's testimony, on the next night he met Morgan, Palka and Rohalla, and Storey said that he needed another car, because he was supposed to turn the Chevrolet into the Indiana rental agency the next morning, but, because he "had rented it under a fraudulent check" he was going to leave it on the street, whereupon Rohalla said that he knew somebody that would give $50 for it. After talking it over with Morgan, Storey decided to let Rohalla have it for $50.

Storey also testified that Rohalla told Storey to follow him, and then Storey drove the Chevrolet behind Rohalla's Edsel car to the rear of a house in the 2900 block on North Damen Avenue where Storey put the Chevrolet in a garage and Rohalla closed the doors. Storey then got in Rohalla's car, followed by Rohalla who gave him $50 and then drove Storey to the 1300 block on North Clark Street.[1] Storey testified that he never saw Rohalla again.

■ 1. Defendant contends that venue was not properly proved in the Northern District of Illinois. While he admits that the indictment charged that defendant received in Chicago a stolen motor vehicle moving from Hammond, Indiana, he maintains that there was no such proof.

We cannot agree with his contention.

We find in the record, in addition to what we have already related, evidence that, according to Storey, he, Morgan and Palka went "to Indiana" and there the car was obtained, that he and Morgan then "went further into Indiana" and later that evening "came back to Chicago". Furthermore the Storey evidence clearly indicates circumstances bearing out Storey's statement that he and Morgan "had come back from Indiana."

Significant is Storey's testimony about driving a car to the 2900 block of North Damen Avenue, because he had also mentioned the address 2924 North Damen Avenue on the $100 check as being in Chicago, Illinois.

Other references in the testimony are in accord with the parts to which we have alluded. We hold that venue in the Northern District of Illinois was proved by the government's evidence. United States v. Budge, 7 Cir., 359 F.2d 732 (1966).

■ 2. The evidence for the prosecution and that offered by the defense presented to the jury a conflict which only the jury could resolve. The contradictions which developed and the inferences as to the guilt or innocence of Rohalla sought to be drawn required that no prejudicial evidence be admitted in violation of any rule of law.

Having these general principles in mind, we now consider the contention of defendant Rohalla that certain evidence offered in rebuttal by the government and received over objections, was reversible error. This evidence was evidently offered to corroborate Storey's testimony that defendant was driving an Edsel car as above stated. Thus, on rebuttal, after FBI agent Williams testified that on October 6, 1964, he saw an Edsel automobile bearing 1964 Illinois license CX 3017 parked in front of 2912 North Damen Avenue, the witness was then asked:

Q. If you know, Agent Williams, to whom is that license registered?

Because of an objection by defense counsel indicating that this was not the best evidence, the question and an answer given were stricken. The following then occurred:

By Mr. Galbraith, government counsel:

Q. Did you make any inquiry as to whom that license number was registered, sir?

---

1. There Storey rented a car not involved in this case.

A. I *checked a book that is published* by the Secretary of State's Office out of Springfield, which lists all of the automobile registrations in the State of Illinois which have been issued up to the date the book is published.

Q. Do you recall when you checked that, sir?

A. I most recently checked the registration approximately one week ago.

Q. What did it show for that particular license, CX 3017, 1964?

Mr. Brody [Defense counsel]: Judge, I will object to this.

The Court: The objection is overruled.

Mr. Brody: Judge, I make a motion for a mistrial at this particular time.

The Court: The motion is denied. Proceed.

Q. By Mr. Galbraith: To whom did it show that that number was registered?

A. The number was registered to Harry E. Rohalla, 1938 North Whipple, *but it was registered, listed for a Plymouth.*

Q. For a Plymouth?

A. Plymouth.

Q. But it was registered to Mr. Rohalla?

A. It was registered to Mr. Rohalla.

[Italics for emphasis.]

On cross-examination by attorney Brody, the following occurred:

Q. Mr. Williams, what is the name of the book that you checked?

A. This *is a book published by the Secretary of State's Office.*

Q. What is the name of it?

A. It is published by the Department of Motor Vehicles, Secretary of State's Office.

Q. Well, does it have a name on it, Mr. Williams?

A. I don't recall specifically the exact name on the cover of the book.

Q. Did it have a year on it?

A. 1964.

Q. Have you got that book in court?

A. *The book is not in court.*

Q. Did you ever make an effort to secure a copy of this book?

A. This book is available, I think in the—

Q. I am asking you if you ever made an effort to secure a copy of this book?

A. *That book is available in our office in Chicago.*

Q. But you didn't bring it to court?

A. No, sir.

Q. And where are your offices located?

A. *At 219 South Dearborn, in the Federal Building.*

Q. *Is that this building here?*

A. Yes.

Q. What floor?

A. 9th floor.

Q. But nowhere in the book did you see the word "Edsel," did you, so far as Harry Rohalla is concerned.

A. As far as this particular license number is concerned, no.

[Italics for emphasis.]

\* \* \* \* \* \*

Q. Well, after you examined the book, did you do anything about—

You say there was a license plate issued to a Plymouth on another kind of a car. Did you do anything about it? Did you tell anyone?

A. This has been discussed with Mr. Galbraith.

In this court counsel for Rohalla contends that it was reversible error for the court to permit the government to prove the contents of a printed record by the oral testimony of a witness. He relies upon the best evidence rule, which we believe should have been applied in this case. As Wigmore[2] stated about the phrase "producing the best evidence",

2. Wigmore on Evidence IV, p. 302, § 1174.

it refers to the rule that the terms of the document must be proved by the production of the document itself. He points out that "this is the use that has longest survived, and its illustrations are too numerous to need citation".

In the case at bar, not only was the best evidence rule openly violated, but the evidence showed that there was practically no excuse therefor. The book which should have been produced in open court was available to the government and was at that time in the same building where the trial was being conducted. It is perfectly apparent that error was committed, but it would be more difficult (if it were necessary) to determine what reason the government had for not producing the record at the trial.

The purpose of this evidence about the contents of the book that was in the building but not in the courtroom was evidently to corroborate its witness Storey, but because it was not the best evidence when elicited, it was legally inadmissible against Rohalla. There was no way that defense counsel could by cross-examination of agent Williams effectively challenge the authenticity or accuracy of a book that was not produced in court.

We are constrained to hold that the admission of Williams' testimony in this respect was prejudicial error, the effect of which can be cured only by ordering a retrial.

We find it unnecessary to consider the questions raised by defendant as to certain other evidence which he claims was improperly admitted at the trial, because we cannot anticipate that on a retrial the same questions will arise.

For the reasons herein set forth, the judgment from which this appeal was taken is reversed and this cause is remanded for a new trial.

Reversed and remanded for a new trial.

CUMMINGS, Circuit Judge (dissenting).

The majority has ordered reversal because the District Court permitted Federal Bureau of Investigation Agent Williams to testify that Illinois license plate CX 3017 was assigned to defendant at his Chicago residence, covering a Plymouth car, even though Mr. Williams had obtained this information from a book published by the Illinois Secretary of State and not in the courtroom.

Defense counsel made an objection when the book was mentioned but neglected to state his ground, as required by Rule 51 of the Federal Rules of Criminal Procedure. Earlier he had objected to testimony with respect to registrations, grounding that objection on the best evidence rule. Assuming *arguendo* that the defendant's "blind" objection to the book was based on the best evidence rule,[1] there must still be no "over-technical and strained application" of the rule, for, as Mr. Justice Sutherland observed in United States v. Manton, 107 F.2d 834, 845 (2nd Cir. 1938), certiorari denied, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012, that would serve "only to hamper the inquiry without at all advancing the cause of truth."

The book in question was available in the Federal Bureau of Investigation office in the United States Courthouse. If defense counsel had really been interested in checking the truth of Agent Williams' testimony, he would have demanded the production of the book[2] instead of trying to create error.

As Professor Wigmore has pointed out, "flexibility" is needed in interpreting the best evidence rule, for it "tends to become encased in a stiff bark of rigidity." As he noted:

"Thousands of times it is enforced needlessly. Hundreds of appeals are made upon nice points of its detailed application which bear no relation at

---

1. Defendant's two briefs in this Court refer mainly to the hearsay nature of Agent Williams' testimony. Only one sentence in defendant's principal brief refers to the best evidence rule.

2. See Gordon v. United States, 344 U.S. 414, 418–419, 73 S.Ct. 369, 97 L.Ed. 447; United States v. White, 223 F.2d 674, 675 (2nd Cir. 1955), certiorari denied, 350 U.S. 888, 76 S.Ct. 143, 100 L.Ed. 782.

all to the truth of the case at bar. For this reason the whole rule is in an unhealthy state. The most repugnant features of technicalism are illustrated in this part of the law of Evidence." (IV Wigmore on Evidence (3rd Ed. 1940) § 1191.)

Professor Wigmore concluded that the trial court has discretion to dispense with the production of the original unless the opponent "bona fide disputes the content of the document" (idem; United States v. Vandersee, 279 F.2d 176, 181 (3rd Cir. 1960), certiorari denied, 364 U.S. 943, 81 S.Ct. 463, 5 L.Ed.2d 374).

The policy of the best evidence rule was fully satisfied, for if Agent Williams' testimony about the license plate had been inaccurate, the defendant would have introduced contrary evidence in order to impeach Williams. Defense counsel did cross-examine Williams about the book and was unable to undermine his testimony. The Secretary of State's office advises that the book in question showed exactly what Agent Williams said. Instead of accepting its truth, as a trial tactic, defense counsel's closing statement chose to argue that the absence of the book should make the jury suspicious of Agent Williams' testimony!

Even if there was any evidentiary error in this respect, the verdict and the judgment should stand if "the conviction [of the reviewing court] is sure that the error * * * had but very slight effect" on the jury. Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557. Thus in Ahlstedt v. United States, 315 F.2d 62, 67 (5th Cir. 1963), certiorari denied, 375 U.S. 847, 84 S.Ct. 101, 11 L.Ed.2d 74, the court considered it was erroneous to have received a photostat of a traffic citation but concluded that the error was harmless under Rule 52(a) of the Federal Rules of Criminal Procedure, because the traffic citation was "a minor circumstance among several major factors strongly indicating guilt". Similarly in United States v. Wheeler, 219 F.2d 773, 778 (7th Cir. 1955), certiorari denied, 349 U.S. 944, 75 S.Ct. 872, 99 L.Ed. 1271, Judge Schnack-

enberg's concurring opinion considered that the best evidence rule had been violated by permitting two Government witnesses to testify what they had learned from examining certain records. Nevertheless, he concluded "in view of the other evidence in the record showing the guilt of the defendants, these errors were not prejudicial and do not require a new trial."

In this case, this "error" was certainly not prejudicial. The majority opinion does not show why it prejudiced defendant. The testimony was not contradicted by defendant; yet the defendant would know what license plate had issued for his car. Also, the absence of the book permitted defense counsel in his closing statement to cast innuendos on the failure to produce it, so that if anything, the absence of the book helped defendant's case before the jury. The production of the book would surely have been demanded by defense counsel if he doubted the veracity of Agent Williams' testimony. Finally, the evidence summarized in the majority opinion fully supports this conviction even if Agent Williams' testimony were completely disregarded. The testimony of witnesses Storey, Morgan, Viola and Lytle all presented strong evidence of defendant's guilt. In fact, the defendant does not even argue that his conviction was unsupported by otherwise competent evidence.

In applying the best evidence rule, we should heed this admonition of Professor McCormick:

"A mystical ideal of seeking 'the best evidence' or the 'original document,' as an end in itself is no longer the goal. Consequently when an attack is made on motion for new trial or on appeal, upon the judge's admission of secondary evidence, it seems that the reviewing tribunal, should ordinarily make inquiry of the complaining counsel, 'Does the party whom you represent actually dispute the accuracy of the evidence received as to the material terms of the writing?' If the counsel cannot assure the court that such a good faith dispute exists, it seems clear that any depart-

ure from the regulations in respect to secondary evidence must be classed as harmless error." (McCormick on Evidence § 209.)

Since defendant's counsel did not assure this Court that "a good faith dispute exists" about the accuracy of this secondary evidence, its receipt "must be classed as harmless error."

In my view, the judgment of the District Court should be affirmed.