**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Daniel JORDANO et al.,
Defendants-Appellants.**

**Nos. 960, 976 and 988, Docket 75–1040,
75–1046 and 75–1047.**

United States Court of Appeals,
Second Circuit.

Argued May 8, 1975.

Decided Aug. 26, 1975.

Robert B. Hemley, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., Southern District of New York and John D. Gordan, III, Asst. U. S. Atty., of counsel), for plaintiff-appellee.

Before FEINBERG, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

In this appeal from judgments of conviction for violation of 18 U.S.C. §§ 371 and 2113, the facts pertinent to the issues raised can be briefly recounted.

On September 17, 1973, Nancy Willis, a girlfriend of the defendant Daniel Jordano, went to the Yorktown Police Station with a complaint that this defendant had taken some checks which belonged to her. There she spoke with a detective named Fielding.

According to testimony which Miss Willis subsequently gave to a grand jury, she also reported to Detective Fielding that she had overheard a discussion in a bar among the defendants Jordano and Jordan and several other men concerning a bank messenger who carried money from one bank to another. Miss Willis testified further that she told Detective Fielding that Jordano had said something about not seeing her on Friday because something big was planned for that day.

On Friday, September 21, 1973, something "big" occurred. A messenger carrying money between the National Bank of North America and the Yonkers Savings Bank was held up and robbed of $36,500.

Gerald L. Shargel, New York City (La Rossa, Shargel & Fischetti, New York City, of counsel), for defendant-appellant Daniel Jordano.

Benjamin J. Golub, New York City, for defendant-appellant Andrew Jordan.

Richard S. Scanlon, White Plains, N. Y., for defendant-appellant Anthony Muffucci.

One of the participants in the crime pleaded guilty and, testifying as a government witness, identified appellants as his accomplices.[1] The prosecution also called Miss Willis as a corroborating witness, and it is around her testimony that the main argument of this appeal centers.

---

1. Another participant, called as a defense witness, also implicated appellants.

Miss Willis flatly denied that she had told Detective Fielding about the conversation involving the bank messenger and the "big" event scheduled for Friday. She stated that her grand jury testimony was untrue and was given because she was scared and threatened by the police and by the FBI. She also denied telling an FBI agent subsequent to the robbery that Daniel Jordano had admitted to her that he was implicated. Finally, and most importantly, she testified on behalf of the defense that Jordano was with her at her home at the time the robbery took place.

■ To counter this testimony, the government offered the pertinent portion of her grand jury testimony, and this was admitted by the District Court as substantive evidence in support of the crimes charged. This, appellants claim, was error. Appellants concede the general rule in this Circuit that prior inconsistent statements of a witness before a grand jury are admissible as affirmative evidence if the witness is available for cross-examination. *See, e. g. United States v. DeSisto*, 329 F.2d 929 (2d Cir.), *cert. denied* 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964). They contend, however, that this rule does not permit the impeachment of one's own witness unless the testimony of the witness comes as a surprise. They say that the government was not surprised in this case because Miss Willis had recanted her grand jury testimony at a prior trial.

■ In making this contention, appellants are struggling upstream against the current of modern opinion.[2] We need only point to our recent decision in *United States v. Rivera*, 513 F.2d 519 (2d Cir. 1975), which involves the identical factual situation and the recently enacted Rule 801(d)(1) of the Federal Rules of Evidence to illustrate which way this current is flowing. Surprise, if a necessary element for impeachment at the

time of trial, was a very modest element *United States v. Kahaner*, 317 F.2d 459 (2d Cir.), *cert. denied* 375 U.S. 835–6, 84 S.Ct. 62, 73, 74, 11 L.Ed.2d 65 (1963), and was not to be construed as synonymous with amazement. The truth, as the government understood it, was contained in Miss Willis' grand jury testimony, supported by the police reports in the government's file. We think it not unreasonable for the government to have expected Miss Willis to adhere to such testimony despite the fact that she had not done so on a prior trial. *See e. g. United States v. Burket*, 480 F.2d 568, 572 (2d Cir. 1973). A contrary holding would put the prosecution in the untenable position of either abiding by her trial testimony or not calling her as a witness.

■ The government also attempted to refute Miss Willis' charge that she was induced to testify falsely before the grand jury because she was threatened and intimidated by the police and the FBI. They did this by calling the police officers involved. This was clearly proper. As pointed out by Judge Friendly in *United States v. Rivera, supra* at 528:

"[T]he Government could not be expected to remain silent in the face of a claim, vigorously developed by defense counsel in cross-examining Hector Vigo and presumably to be further exploited in summation, that it had procured false testimony by threats—a claim which, if credited by the jury, would have an effect far beyond the destruction of Vigo's grand jury testimony."

■ Finally, the United States Attorney attempted to impeach the credibility of Miss Willis as an alibi witness for the defense by showing that she had made the several statements to the police which were inconsistent with her alibi testimony. This, again, was proper. A party may always attack the credibility

2. 4 Jones On Evidence (6th Edition 1972) § 26.11 at 197.

of an adverse witness by showing that she has made statements which are inconsistent with some material part of his testimony. *United States v. Briggs*, 457 F.2d 908 (2d Cir.), *cert. denied* 409 U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972). The District Court made it very clear by repeated instructions to the jury that the testimony of the police officers was admitted solely for impeachment purposes and not as affirmative evidence, thus distinguishing it from Miss Willis' grand jury testimony.

■ Appellants would have us forget the damaging alibi testimony which Miss Willis gave and treat this as a situation where the witness simply failed to render the assistance which the government expected of her. They cite an imposing array of cases in support of the proposition that where the testimony of a witness is not damaging, but simply disappointing, the party calling such witness cannot, through the device of impeachment, supply the evidence which was not forthcoming from the witness. *See United States v. Cunningham*, 446 F.2d 194 (2d Cir.), *cert. denied* 404 U.S. 950, 92 S.Ct. 302, 30 L.Ed.2d 266 (1971); *Taylor v. Baltimore and Ohio R. R. Co.*, 344 F.2d 281 (2d Cir.), *cert. denied* 382 U.S. 831, 86 S.Ct. 72, 15 L.Ed.2d 75 (1965). However, we must view the situation as it is, not as appellants would like it to be. The alibi testimony of Miss Willis was the heart of Daniel Jordano's defense. Where a party's case "may stand or fall on the jury's belief or disbelief of one witness, his credibility is subject to close scrutiny", *Gordon v. United States*, 344 U.S. 414, 417, 73 S.Ct. 369, 372, 97 L.Ed. 447 (1953), and his adversary is entitled to "utilize the traditional truth-testing devices of the adversary process". *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). We find no error in the government's impeachment efforts, properly limited as they were by the court's instructions.

■ Appellants' remaining allegations of error do not require extended discussion. Appellant Jordan complains of the District Court's refusal to admit into evidence an alleged copy of a junkyard receipt offered in support of his alibi placing him at the junkyard at the time of the crime. He contends that this secondary evidence was admissible because he had lost the original receipt after the copy was made. The trustworthiness of secondary evidence is ordinarily for the trial court. *United States v. Ross*, 321 F.2d 61 (2d Cir.), *cert. denied* 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963). Defendant's failure to call the junkyard dealer or to produce the junkyard records must have weighed heavily against him with the trial judge. We are not prepared to say that the judge erred.

■ The accuracy of the diagram of the scene of the crime was testified to by a government witness, and it was properly admitted into evidence. *Cohen v. Kindlon*, 366 F.2d 762 (2d Cir. 1966).

■ The trial judge had broad discretion in conducting the voir dire of prospective jurors, *United States v. Ploof*, 464 F.2d 116 (2d Cir.), *cert. denied* 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972), and no error resulted from his failure to inquire whether any of them believed that a defendant had a duty to take the witness stand to explain anything. *United States v. Clarke*, 468 F.2d 890 (5th Cir. 1972).

■ Viewing the evidence in the light most favorable to the government, we find no merit to appellants' contention that it fails to establish the crimes charged in the indictment.

The judgments of conviction are affirmed.