# STATE OF CONNECTICUT *v.* ANTHONY THERGOOD

### APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 136

Argued November 21, 1975—decided March 19, 1976

*Francis T. Mandanici,* for the appellant (defendant).

*Frank S. Maco,* assistant prosecuting attorney, for the appellee (state).

DAVID M. SHEA, J. The defendant was found guilty of attempted robbery in the third degree in violation of General Statutes §§ 53a-49 and 53a-136 after a jury trial. The complainant testified that on December 20, 1974, as she was walking along John Street in Bridgeport at about five o'clock in the afternoon, she was seized from behind by a man who ripped open her pocketbook, causing the contents to spill on the ground and the complainant to fall. Apparently alarmed by the screams of the complainant, her assailant fled from the scene only to return moments later with a gun which he brandished in her face and that of her daughter, who was assisting her mother to rise. Again he fled, chased by several people. On John Street, a motorist saw him enter a car which had stopped for a red traffic light. The light changed to green almost immediately and the car left the scene. The car bore a New York license plate which was registered to the defendant.

The complainant later identified one Robert Shipman as the person who attacked her and

attempted to take her pocketbook. At the time of trial Shipman had previously pleaded guilty to a charge of attempted robbery in the third degree as a result of this incident. Shipman testified on behalf of the state that the defendant proposed the idea of snatching a pocketbook to him and another youth. They agreed on a plan for the defendant to remain in the parked car while the other two would steal a pocketbook. The defendant drove them to John Street where he parked the car to wait for Shipman and the other youth.

In this appeal the defendant does not question the sufficiency of the evidence to support the verdict, which depended in large part upon the credibility of Shipman. The defendant claims error in certain rulings of the trial court.

## I

The defendant requested an individual voir dire at the start of the trial. In response the trial court stated that twelve jurors would be brought into the jury box where "you may voir dire each one individually." A group of twelve jurors was seated in the jury box, some of whom were questioned individually by the defendant's counsel, who also addressed several collective inquiries to them. Six jurors were ultimately selected.

The jury selection procedure used by the trial court was similar to that which was sanctioned in *Childs* v. *Blesso,* 158 Conn. 389, 394. There, it was held that General Statutes § 51-240, which gives litigants the right to question each juror individually, was not violated because the court had allowed the parties to direct their questions to individual jurors, although inquiry outside the presence of the other jurors was precluded unless a juror made that request.

The defendant claims that the adoption in 1972 of article IV of the amendments to the Connecticut

constitution requires that, where the demand is made, each juror must be interrogated incommunicado. He relies on the last sentence of that amendment to § 19 of article I of the constitution which provides as follows: "The right to question each juror individually by counsel shall be inviolate." That language means simply that the right to question jurors, as it existed under the statutes and case law at the time of the adoption of the amendment, should remain essentially intact, in the sense that the substance of the right or its exercise may not be curtailed. *State* v. *Perrella,* 144 Conn. 228, 231. The amendment gives constitutional protection to the wide discretion in conducting the examination of jurors vested in the trial court, as recognized in many cases prior to its adoption. *State* v. *Higgs,* 143 Conn. 138, 142; *Duffy* v. *Carroll,* 137 Conn. 51, 57; *Sherman* v. *William M. Ryan & Sons, Inc.,* 126 Conn. 574, 578. That constitutional protection extends necessarily to the discretionary use of the method of questioning jurors prescribed by the court in this case, a procedure in common practice which had been expressly approved at the time the amendment became effective. *Childs* v. *Blesso,* supra, 394. There is nothing in the language of that amendment to indicate that by its approval the electorate intended to enshrine as a rigid constitutional principle the practice of questioning each juror outside the presence of the other prospective jurors.[1] That practice has been frequently abused by protracting unduly the process of jury selection.

---

[1] In an unpublished decision dated March 7, 1974, the Appellate Division of the Court of Common Pleas upheld the denial of a defendant's request for an individual voir dire in the absence of other jurors. Jury selection took place in accordance with the procedures approved in *Childs* v. *Blesso,* 158 Conn. 389, 394. Certification was denied by the Supreme Court. *State* v. *Distante,* 166 Conn. 681.

It should also be noted that the defendant's request for an individual voir dire was in fact granted when the trial court stated that "you may voir dire each one individually in the jury box" with the other jurors present. The defendant never actually requested an examination of each juror outside the presence of the other jurors.

## II

Before trial the defendant moved for discovery of "the record of prior convictions, including juvenile and youthful offender matters and any criminal charges, including juvenile and youthful offender charges pending, of Robert Shipman." The request was denied; however, the state agreed to produce the adult criminal record of any witness it might call, including Shipman. The defendant contends that that ruling conflicts with *Davis* v. *Alaska*, 415 U.S. 308, in which it was held that state policy against disclosure of juvenile criminal records must yield to the right of an accused to cross-examine a witness concerning his vulnerable status as a juvenile probationer for the purpose of impeaching his testimony.

The defendant's discovery motion referred to General Statutes § 54-86a which authorizes the court to "order the attorney for the state to permit the defendant to inspect and copy . . . any relevant (1) exculpatory information or material . . . within the possession, custody or control of the state, the existence of which is known to the attorney for the state or to the defendant." The attorney for the state asserted that he did not have in his possession any juvenile record of Shipman. It does not appear that the defendant made any request of the Juvenile Court for disclosure of Shipman's juvenile record, pursuant to General Statutes § 17-57a, which permits disclosure of juvenile records to any

party only on order of such court. Although the motion mentioned Shipman's youthful offender record, the argument before the trial court focused exclusively upon his juvenile record, possibly because the defendant's counsel assumed he had no youthful offender record since he was only sixteen years old at the time of trial. In any event, the defendant made no request that the court exercise its discretion to permit an inspection of any records pertaining to any youthful offender proceedings including Shipman, as authorized by General Statutes § 54-76l.[2] There is nothing in this case to indicate that the prosecutor had possession or knowledge of any juvenile or youthful offender record involving Shipman or, indeed, that there were any such proceedings, or that they would have been "relevant," as required by § 54-86a, on which the defendant relied.

We conclude that the defendant's motion for Shipman's juvenile and youthful offender records was properly denied because the defendant did not utilize the statutory procedures available to him for obtaining those documents. We have no reason to suppose that the prosecutor was any better able to obtain the information sought than the defendant.

### III

The defendant also claims error in two rulings on evidence made by the trial court. In cross-examining Shipman the defendant asked whether he had ever violated any type of probation. The state objected and the objection was sustained by the court. The defendant then asked Shipman when his probation was violated, if it ever was. Another objection by the state was sustained, the trial court

---

[2] "[General Statutes] § 54-76l. RECORDS CONFIDENTIAL. The records of any youth adjudged a youthful offender . . . shall not be open to public inspection . . . . The court in its discretion . . . may permit an inspection of any paper or records. . . ."

stating that it had already ruled on the matter and that "nothing further needs to be said on that point." The defendant excepted to those rulings.

In his brief the defendant contends that those rulings violated the principle of *Davis* v. *Alaska,* 415 U.S. 308, that the probationary status of a witness is a proper subject of cross-examination in order to establish a motivation to fabricate. The questions which were excluded by the court's ruling, however, were not restricted to ascertaining whether Shipman was on probation at any relevant time, but, instead, sought to determine whether he had ever violated probation. The ostensible purpose of that inquiry was to attack the character of the witness through acts of prior misconduct, in violation of the familiar principle that limits that impeachment to felony convictions. *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472. If the defendant wished to discover merely Shipman's status as a probationer, with its consequent ramifications on his credibility, he could have done so without improperly alluding to violations involving wholly unrelated misconduct. He did ask a question previously about Shipman's probationary status, objection to which was sustained for no apparent reason, but no exception was taken to that ruling nor is it claimed as error in the statement of issues or in the brief. The ruling of the trial court which is the subject of this appeal was correct.

After his inquiry concerning probation violations was barred, the defendant asked Shipman whether he could recall any "other matters" that were discussed with the prosecutor or anyone from his office at the time he pleaded guilty. An objection to the question was sustained and an exception was taken.

The defendant claims that that ruling prevented him from inquiring about deals or promises which

may have been made by the prosecutor in consideration of Shipman's testimony. The trial court might well have assumed, however, that the reference to "other matters" was an invitation to irrelevancies, possibly including information given by Shipman in respect to the unrelated crime of third degree burglary to which he also had pleaded guilty. The defendant had already cross-examined Shipman extensively concerning his discussions with the prosecutor or the police. Shipman had admitted that it was part of the arrangement at the time of his plea that he would testify in this case. That ruling did not preclude a further inquiry into the subject of promises or deals. It was correct in view of the overly broad nature of the question.

There is no error.

In this opinion SPEZIALE and SPONZO, Js., concurred.