Thomas **PERRY**, Petitioner,

v.

Leon **VINCENT**, Superintendent Greenhaven Correctional Facility, Stormville, New York, Respondent.

No. 74 C 1262.

United States District Court, E. D. New York.

Oct. 14, 1976.

Thomas Perry, pro se.

William J. Gallagher, The Legal Aid Society, Jonathan J. Silbermann, New York City, of counsel, for petitioner.

Louis J. Lefkowitz, Atty. Gen., State of New York by Ralph McMurry, Asst. Atty. Gen., New York City, for respondent.

## MEMORANDUM AND ORDER

PLATT, District Judge.

By petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241, Thomas Perry challenges the New York Courts' refusal to permit him to withdraw his plea of guilty to attempted possession of a weapon.

## FACTS

On October 1, 1971 at 1:30 A.M. Patrolman Manuel Garcia was cruising in his police car at Kennedy Airport. As he approached the taxi line at the Northwest Airlines Terminal building, he saw three men arguing in front of the first taxi in line. When the patrolman stopped his car, one of the men, later identified as petitioner Thomas Perry, got into his car and drove away. The remaining drivers told Patrolman Garcia that Perry had threatened them with a gun.

Patrolman Garcia chased Perry's car and ordered him to stop on the Van Wyck Expressway. Garcia noticed Perry bending over in the front seat toward his right side. Perry stopped his car and stepped out.

Patrolman Garcia questioned Perry about the information supplied by the other taxi drivers. Perry denied threatening anyone or possessing a gun. However, after frisking him, Garcia reached under the front seat of Perry's car and found a loaded .32 caliber revolver.

Petitioner sought to suppress the gun seized by Patrolman Garcia. However, the Supreme Court, Queens County (Leahy, J.) ruled that there was probable cause for the search and seizure, and accordingly denied the motion.

An examination of the record [1] shows that petitioner subsequently made two at-tempts to plead guilty. At the conclusion of the first attempt the State Court reject-

1. March 6, 1972 plea:

THE CLERK: Second call. People of the State of New York, against Thomas Perry. Indictment No. 4198–71. Are you Thomas Perry?

THE DEFENDANT: Yes.

THE CLERK: And is Jerome Mandel, here present, your lawyer to represent you? Are you represented by Mr. Mandel, here present?

THE DEFENDANT: Yes.

MR. MANDEL: Your Honor, at this time, the defendant has an application and that is to withdraw his previously entered plea of not guilty and at this time the defendant offers to plead guilty to attempted possession of a weapon as a Class E Felony to cover the indictment.

THE COURT: All right. Thomas Perry, did you hear what your lawyer, Mr. Mandel has said to the Court?

THE DEFENDANT: Yes.

THE COURT: Do you understand what your lawyer said to the Court?

THE DEFENDANT: Yes.

THE COURT: Do you understand that Mr. Mandel cannot plead guilty in your behalf?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you are the only person who may plead guilty in this case?

THE DEFENDANT: Yes.

THE COURT: Do you wish to plead guilty to the crime of attempted possession of a weapon as a Class E Felony to cover the indictment Number 4198 of 71?

THE DEFENDANT: Yes.

THE COURT: Yes. Do you understand that if I accept your plea of guilty that I may send you to jail for four years?

THE DEFENDANT: Yes.

THE COURT: You still want to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Now, Has your lawyer, Mr. Mandel, or anyone in his behalf, made any promise to you about the sentence in this case?

THE DEFENDANT: No.

THE COURT: Has the Court, meaning myself, or anyone in my behalf, made any promise to you about sentence in this case?

THE DEFENDANT: No.

THE COURT: Has the Court, meaning myself, or anyone in my behalf, made any promise to you about sentence in this case?

THE DEFENDANT: No.

THE COURT: Again, I state to you, Thomas Perry, do you understand that if I accept your offer to plead guilty to the crime of attempted possession of weapons as a Class E felony, I may send you to jail for four years?

THE DEFENDANT: Yes.

THE COURT: Do you still want to plead guilty?

THE DEFENDANT: Yes.

THE COURT: All right. Now you tell me in your own words exactly what took place on October first, 1971, here in Queens County?

THE DEFENDANT: I was at the Kennedy Airport.

THE COURT: What were you doing there?

THE DEFENDANT: Driving a taxi at Kennedy Airport.

THE COURT: Go ahead.

THE DEFENDANT: I was waiting at the air terminal.

THE COURT: Which?

THE DEFENDANT: North-East; north-west.

THE COURT: Continue. What time was it? Was it in the day-time or the night-time?

THE DEFENDANT: I think it was somewhere in the neighborhood of one o'clock in the morning.

THE COURT: One o'clock in the morning?

THE DEFENDANT: In the morning. In the morning.

THE COURT: Go ahead.

THE DEFENDANT: And I came to Kennedy Airport, waiting for the line-up. You know at the line-up at the airport. The taxis wait in the line there.

THE COURT: Were you driving a metered cab?

THE DEFENDANT: Right. I came to the line. I seen some people over there. They were talking, so I pulled up—you go up to wait on the hill. You pull down; you come down the hill; you get a number. I pulled down the hill. There are three cabs sitting in front of me.. So, I pulled up; another cab pulls in front of me. I says, "Well," when I stepped outside of the cab. I said, "Is anything coming out of the airport, like the plane that came in?" They said "No." I said, "O.K." By that time, I pulls off. The next thing I know, the police officer pulls up by me and is asking me to pull over. I pulled over. He gets out. He says, "Somebody said you pulled a weapon on him around the corner." I said, "I pulled a weapon? What are you talking about? A weapon?" He said, "Do you have a weapon on you?" I said, "No." He said, "Get out of the car." I stepped out of the car. He said, "Stand by the fender." He took me there. He said, "Do you have anything on you?" He searched me. He went back to the car. He came out with a weapon. He said, "You are under arrest." That was it.

THE COURT: Whose weapon did he come up with?

THE DEFENDANT: It wasn't mine, I don't know.

THE COURT: You know nothing about this weapon?

THE DEFENDANT: I had ten or fifteen people in the car that night.

THE COURT: You didn't know that that revolver was in the cab?

THE DEFENDANT: (No answer)

MR. MANDEL: You knew that the revolver was in the cab? The judge asked you? You have to answer the Judge.

THE COURT: Did you know that the revolver was there?

THE DEFENDANT: Yes. I knew the revolver was there.

THE COURT: Did you put it there?

THE DEFENDANT: No.

THE COURT: Who put it there?

THE DEFENDANT: I don't know.

THE COURT: But you knew it was there?

THE DEFENDANT: Yes.

THE COURT: When did you find out that it was there, Perry?

THE DEFENDANT: Your Honor, can I—

THE COURT: Let me tell you something, Perry. We do not take any pleas from the innocent in this courtroom. If you are innocent of this charge, we are going to trial on the charge. If you want to plead guilty, then you have to tell me the facts that led up to the arrest. Now, from what you have told me now, you are innocent of these charges, and I won't take your plea. What do you want to do?

THE DEFENDANT: Your Honor, can I say something? The weapon was put there. I know who put it there. It wasn't my weapon. That's what I am trying to tell you. That's why I pleaded guilty.

THE COURT: When did you know that the weapon was there?

THE DEFENDANT: Well, actually when I left the airport terminal.

THE COURT: Do you mean just before you were arrested?

THE DEFENDANT: Right.

THE COURT: The weapon was put there then.

THE DEFENDANT: Yes.

THE COURT: I won't take your plea, Mister. You are playing games with the Court. I will not accept your plea. When do you want to go to trial, Mr. Mandel?

MR. MANDEL: Your Honor, I guess it would have to be next week.

THE COURT: All right.

MR. MANDEL: I can make it next Monday.

MR. WOLFE: No objection.

THE COURT: All right. March 13 for trial.

MR. MANDEL: Your Honor, I have another case for trial in this courtroom or in this courthouse on the thirteenth.

THE COURT: Criminal or civil?

MR. MANDEL: It is a criminal trial in Part Nine.

THE COURT: Judge Agresta?

MR. MANDEL: Yes.

THE COURT: On next Monday?

MR. MANDEL: It is on Next Monday. Can we have the following week, possibly?

THE COURT: Mark this case subject to your engagement with Judge Agresta next Monday for trial. Perry, bail continued. All right. March 13, 1972 plea:

THE CLERK: Indictment No. 4198–71, People versus Thomas Perry—You are Thomas Perry?

THE DEFENDANT: Yes.

THE CLERK: Where is Mr. Mandel?

THE DEFENDANT: Next door.

THE COURT: He is here, though. Second call.

THE CLERK: Are you Thomas Perry?

THE DEFENDANT: Yes.

THE CLERK: Does Jerome P. Mandel, here present, represent you?

THE DEFENDANT: Yes.

MR. MANDEL: I am ready to go to trial.

THE COURT: Are the People ready?

MR. GALFUNT: Yes.

MR. MANDEL: Your Honor, at this time, I have an application, that is, on behalf of the defendant, Thomas Perry, to withdraw his previously entered plea of not guilty and he offers at this time to plead guilty to attempted possession of a dangerous weapon as a Class E Felony, to cover the indictment No. 4198–71.

THE COURT: Thomas Perry, did you hear what your lawyer, Mr. Mandel has said?

THE DEFENDANT: Yes.

THE COURT: Before I go any further, are you guilty of this charge?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is this your gun?

THE DEFENDANT: Yes.

THE COURT: Did you know it was there?

THE DEFENDANT: Yes.

THE COURT: Did you put it there?

THE DEFENDANT: Yes.

THE COURT: And did you threaten the people back at the airline terminal with the gun?

THE DEFENDANT: No, Your Honor.

THE COURT: You did not?

THE DEFENDANT: It was my gun, your Honor. I put it there.

THE COURT: How did they know it was there? Did you show it to anybody?

THE DEFENDANT: No, your Honor.

THE COURT: How did they know it was there? You don't know?

THE DEFENDANT: No, I don't.

THE COURT: Do you understand that your lawyer cannot plead guilty in your behalf?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you are the only person who may plead guilty in this case?

THE DEFENDANT: Yes.

THE COURT: And you do with (sic) to please (sic) guilty to the crime of attempted possession of weapons and dangerous instruments and appliances as a Class E felony?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if I accept your plea of guilty, that I may send you to jail for four years?

THE DEFENDANT: Yes.

THE COURT: You still want to plead guilty?

THE DEFENDANT: Yes.

ed his plea in that petitioner's claims with respect to the facts indicated that he might be innocent of the charges, and the Court set the matter down for trial. On the date set for trial the petitioner admitted facts showing his guilt, and the Court accepted his plea. During the course of the exchanges between the petitioner and the Court in both proceedings, the Court in its effort to be certain that petitioner's plea was completely voluntary, repeatedly told petitioner that he alone (and not his lawyer) could plead guilty, that the Court would not accept a guilty plea from an innocent man, that if he was innocent he could go to trial, and that if he was found guilty he might be

sentenced to four years in jail. The Court asked him several times whether any promises had been made to him, receiving in each instance a negative reply.

Petitioner was later sentenced to the maximum term of four years. Evidently disappointed with his sentence, petitioner immediately sought to withdraw his guilty plea. This application was denied by the New York Courts.

Petitioner now asks this Court to intervene and permit him to withdraw his guilty plea and order his criminal record expunged. Two arguments are advanced. First, petitioner contends that the state

THE COURT: Has your lawyer, Mr. Mandel, or anyone in his behalf, made any promises to you about the sentence in this case?

THE DEFENDANT: No.

THE COURT: Has anyone in behalf of the District Attorney's Office made any promise to you about sentence in this case?

THE DEFENDANT: No.

THE COURT: Has anyone in behalf of the Court, meaning myself, made or anyone in my behalf made any promise to you about the sentence in this case?

THE DEFENDANT: No.

THE COURT: Again, I say to you, that if I accept your offer to plead guilty to the crime of attempted possession of weapons and dangerous appliances as a Class E Felony, to cover this indictment, Number 4198–71, I may send you to jail for four years. Do you still want to plead guilty?

THE DEFENDANT: Yes.

THE COURT: All right. Tell me in your own words exactly what happened on October 1st, 1971, here in Queens County?

THE DEFENDANT: I was working a yellow cab, a Medallion cab.

THE COURT: What time of the day or night was that?

THE DEFENDANT: After one o'clock.

THE COURT: In the morning?

THE DEFENDANT: Yes, morning. And I came through the Northwest Airline, your Honor, and I was waiting on the line, and two cabs pulled over in front. I pulled up and double-parked. I seen some commotion, your Honor, and I seen a patrol car coming down; pulled in front and stopped me while I am double-parked. So, I get back in my cab; pulled on out around the bend; Police officers pulled me over and stopped me and—

THE COURT: What?

THE DEFENDANT: Pulled me over; stopped me; asked me to get out of the car. I got out of the car; he searched me; he went back and looked in the car; found the gun under the seat.

THE COURT: What type of a weapon? A revolver?

THE DEFENDANT: Yes.

THE COURT: Loaded?

THE DEFENDANT: Yes.

THE COURT: Who put it there?

THE DEFENDANT: I did.

MR. GALFUNT: Based on the statements made by the defendant, the People would recommend the acceptance of the plea, in view of the fact that the ends of justice would be served.

THE COURT: The defendant's plea is accepted. Take the pedigree.

THE DEFENDANT, THOMAS PERRY, WAS DULY SWORN.

THE CLERK: That is your name?

THE DEFENDANT: Thomas Perry.

THE CLERK: How old are you?

THE DEFENDANT: Thirty-one.

THE CLERK: When were you born?

THE DEFENDANT: Full date—September 3, 1940.

THE CLERK: Are you a citizen?

THE DEFENDANT: Yes.

THE CLERK: Where were you born?

THE DEFENDANT: New York.

THE CLERK: What is your home address?

THE DEFENDANT: 1979 Eastern Parkway, Brooklyn, New York.

THE CLERK: Is your true full name Thomas Perry?

THE DEFENDANT: Yes.

THE CLERK: The pedigree is completed.

THE COURT: All right, Mr. Mandel, is April 27th at two P.M. in this courtroom convenient to you for sentence?

MR. MANDEL: Yes.

THE COURT: Sentence date. He is on bail?

MR. MANDEL: Yes.

THE COURT: Bail is continued.

THE CLERK: Thomas Perry, take a seat in the courtroom. I may further instruct you.

courts erred in not granting his motion to suppress the gun. Second, he argues that his guilty plea was constitutionally infirm under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

## I

■ Petitioner has exhausted his State remedies. 28 U.S.C. § 2254(b). His judgment of conviction was unanimously affirmed without opinion by the Appellate Division, Second Department, on February 25, 1974. An application for leave to appeal to the New York Court of Appeals was denied on April 17, 1974. The issues raised in the instant petition were argued in petitioner's appellate briefs to the State courts.

## II

■ Subsequent to the filing of this action, petitioner was unconditionally released from jail. However, since this Court took jurisdiction while petitioner was in custody, the controversy is not moot. *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

## III

■ Petitioner's argument that the state courts improperly denied his motion to suppress is not cognizable in federal habeas corpus. *Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). As the Court said in *Stone* (at p. ——, 96 S.Ct. at p. 3052).

"[We hold, therefore], that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was . . . introduced at trial."

*Stone* is dispositive of petitioner's first argument.

## IV

Petitioner's second argument presents a more difficult question. Specifically, petitioner contends that the state court failed to warn him that by pleading guilty he waived three constitutional rights: 1) the privilege against self-incrimination; 2) the

right to confront one's accusers; and 3) the right to a jury trial with the burden of proof resting on the government.

The starting point for a discussion in this area must be the Supreme Court's decision in *Boykin v. Alabama, supra.*

In *Boykin,* the defendant pled guilty to five indictments charging him with common law robbery, an offense punishable by death under Alabama law. The Court reasoned that because the record was silent, the trial judge had failed to ask the defendant any questions concerning the facts surrounding his plea, and had failed to warn him of the constitutional rights he was waiving. Furthermore, the Court noted that no evidence concerning the defendant's character, background, or prior criminal record was introduced.

The defendant here argues that in *Boykin,* the Supreme Court said (395 U.S. at p. 243, 89 S.Ct. at p. 1712):

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record."

■ *Boykin* is not dispositive of the instant petition. First, the facts of this case are distinguishable from those in *Boykin.* Unlike in *Boykin,* here the New York Court repeatedly sought to ascertain whether or not the petitioner's plea was voluntary. The Court told petitioner *four times* that only he could plead guilty, not his lawyer. The Court cautioned petitioner *four times* that he might be sentenced to four years in jail. The Court asked petitioner *six times* whether or not any promises had been made

to him. The Court admonished petitioner that it would not accept a guilty plea from an innocent man. The Court informed petitioner that he could go to trial if he was innocent of the charge. Indeed, the second guilty plea was entered on the very morning that the trial was scheduled to begin.

Furthermore, unlike in *Boykin*, the record in this case is not silent as to petitioner's background. The record reflects that the petitioner was thirty-one years old and the sole support for his five children. He was regularly employed and earned a modest salary. Significantly, petitioner did have a prior criminal record.

Moreover, unlike in *Boykin*, the New York Court persistently sought to ascertain petitioner's complete involvement in the events leading up to his arrest. The Court's refusal to accept petitioner's first plea is convincing evidence of its persistence in this regard.

■ Second, the true test of the voluntariness of a guilty plea was stated in the Supreme Court's later decision in *Brady v. U. S.*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In *Brady*, the Court upheld a guilty plea even though the defendant had not expressly been advised of all of the constitutional rights mentioned in *Boykin*. The Court held that voluntariness can only be determined by considering "all of the relevant circumstances surrounding it." *Brady v. U. S., supra*, at 749, 90 S.Ct. at 1469. *Brady* clarifies *Boykin* and clearly implies that in reviewing the voluntariness of a guilty plea the failure of a state court to read a litany of constitutional rights is not the determining factor. *See Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

The Second Circuit has recently considered *Boykin* in a case not dissimilar to the instant petition. *Kloner v. U. S.*, 535 F.2d 730 (2d Cir. 1976).

In *Kloner*, the trial judge informed the defendant of his right to trial by jury, advised him of the maximum sentence that could be imposed, elicited assurances that he was voluntarily entering the plea, and ascertained the factual basis for the plea. The Second Circuit upheld the guilty plea. The Court said (at p. 733):

> "[A] resulting plea may be upheld as long as the district judge has adequately informed the defendant of 'the alternative courses of action open to' him, *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168 (1970), so that the defendant has not, either because of ignorance or misinformation been misled into entering the plea."

The Court rejected the argument that the defendant should have been expressly told of the right to remain silent and the right to confront one's accusers.

The facts presented by the instant petition are closely analogous to those in *Kloner*. Here, as in *Kloner*, petitioner was told of the charges and advised of the maximum sentence. Here, as in *Kloner*, the Court inquired into the factual basis for the plea.

The only significant difference between this case and *Kloner* is that here the Court did not expressly warn petitioner of his right to trial by jury. However, four factors point to the fact that contrary to his contentions, petitioner knew that his plea waived the right to a trial by jury. First, petitioner was represented by competent counsel. Second, petitioner had a past criminal record. Third, petitioner was told by the trial judge that, "if you are innocent of this charge we are going to trial on the charge". In addition, petitioner's counsel was asked when he wanted to go to trial. Fourth, petitioner pled guilty on the morning that the trial was scheduled to begin. These factors are compelling evidence that petitioner knowingly waived his right to a jury trial.

■ Furthermore, the guilty plea reduced petitioner's exposure to more severe charges. The Second Circuit has held that in assessing the voluntariness of a guilty plea the courts must look also to the rational motivations of the defendant for pleading guilty, *U. S. ex rel. Brown v. LaVallee*, 424 F.2d 457 (2d Cir. 1970), *cert. denied*, 401

U.S. 942, 91 S.Ct. 946, 28 L.Ed.2d 223 (1971), and to whether the lack of knowledge affected the defendant's ability to make an intelligent decision. *Kelleher v. Henderson*, 531 F.2d 78 (2d Cir. 1976); *Caputo v. Henderson*, 2 Cir., 541 F.2d 979 (1976).

Other Circuits have held that *Boykin* does not require that the state courts read a litany of constitutional rights to defendants in order to ensure that their guilty pleas are voluntarily entered. *See Wade v. Coiner*, 468 F.2d 1059 (4th Cir. 1972); *McChesney v. Henderson*, 482 F.2d 1101 (5th Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974); *Stinson v. Turner*, 473 F.2d 913 (10th Cir. 1973); *Wilkins v. Erickson*, 505 F.2d 761 (9th Cir. 1974). As the Court said in *Stinson, supra* (at p. 915):

"    .   .    We feel that *Boykin* imposed only that requirement of an affirmative record showing of a voluntary and intelligent plea.  The remainder of the opinion does expressly discuss the three enumerated constitutional rights.  We feel, however, that these rights were set out to demonstrate the gravity of the trial court's responsibility, but that no procedural requirement was imposed that they be enumerated.  The main purpose is '.   .    to make sure [the accused] has full understanding of what the plea connotes and of its consequence.' " 395 U.S. at 244, 89 S.Ct. at 1712.

For the foregoing reasons petitioner's application for a writ of habeas corpus must be, and the same hereby is, denied.

SO ORDERED.