**Anthony THERGOOD, Petitioner,**

**v.**

**Richard A. TEDFORD, Warden, State of Connecticut Community Correctional Center, Bridgeport, Connecticut, Respondent.**

Civ. No. B–76–202.

United States District Court,
D. Connecticut.

Jan. 12, 1978.

Francis T. Mandanici, Bridgeport, Conn., for petitioner.

Robert E. Beach, Jr., New Haven, Conn., for respondent.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

In this application for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, petitioner Anthony Thergood contends his state court conviction was constitutionally tainted by the trial judge's rulings which restricted the cross-examination of an admitted accomplice and the prosecution's principal witness, Robert Shipman.[1]

---

1. The petitioner also alleges that the denial of the opportunity to conduct an individual voir dire of each prospective juror outside the presence of other members of the jury panel was constitutional error. The claim appears to lack merit. See *State v. Burns*, 173 Conn. 317, 321, 377 A.2d 1082 (1977); *Childs v. Blesso*, 158 Conn. 389, 260 A.2d 582 (1969). In any event, if the State elects to retry the petitioner in conformity with this Court's decision, the issue

## I

The record reveals that on December 20, 1974, Mrs. Barbara Wilson was walking along a street in Bridgeport when a youth, later identified as Shipman, seized and ripped open her pocketbook, causing the contents to fall to the ground. Thereupon the assailant ran from the scene only to return moments later with a gun. Again he fled, chased by several spectators. At a nearby intersection, he entered an automobile which had stopped for a red signal. When the light changed to green, the car, which was registered to the petitioner, left the area.

Thergood and Shipman were subsequently apprehended and charged with attempted robbery in the third degree, in violation of Conn.Gen.Stat. §§ 53a–49, 53a–136. Prior to trial the 16-year-old Shipman pleaded guilty to the charge and, in addition, entered a plea of guilty to an unrelated charge of burglary in the third degree. Terms of imprisonment were imposed in both cases.

Thergood, who was 19 years old, maintained his innocence and elected to be tried by jury. At this trial, Shipman testified on behalf of the state that Thergood conceived the idea to steal the pocketbook and induced him and another youngster, Wayne White, to participate. He also stated that they had agreed on a plan whereby Shipman and White would snatch the purse and Thergood would drive the getaway car. The petitioner took the stand and denied complicity in the theft. While admitting that Shipman entered his car at the intersection, he claimed he was only intending to give Shipman a ride to his home and was unaware that his vehicle was being used to escape from a crime.

■ Following the two-day trial, the petitioner was found guilty and, on June 17, 1975, was sentenced to a term of one-year imprisonment. The conviction was affirmed by the Appellate Session of the Superior Court, *State v. Thergood*, 33 Conn.

Sup. 599, 363 A.2d 1121 (1976); the Connecticut Supreme Court denied a Petition for Certification for Review on June 15, 1976. The instant petition for habeas relief followed. Although Thergood has now been released from prison, the petition is not moot. *Carafas v. LaVallee*, 391 U.S. 234, 237–240, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); see also *Gosa v. Mayden*, 413 U.S. 665, 670 n. 3, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); *Perry v. Vincent*, 420 F.Supp. 1351, 1356 (E.D.N.Y.1976), aff'd mem., 553 F.2d 94 (2 Cir. 1977).

## II

It is not open to dispute that Shipman was the State's key witness. His testimony provided the direct link between the crime and the petitioner. Neither Mrs. Wilson nor any of the bystanders was able to identify the petitioner as the driver of the escape vehicle. Thus it was highly unlikely that a conviction would have been obtained without Shipman's cooperation and testimony implicating the petitioner. In the course of his direct testimony, Shipman denied that "any promises" had been made to him in exchange for his testimony.

Defense counsel recognized that his most effective trial strategy had to be, by necessity, an attack on Shipman's credibility. Among other things, he decided to focus his cross-examination on Shipman's adult and juvenile criminal records, including the fact that Shipman was currently on probation for two years by order of a juvenile court after having been adjudicated a delinquent for theft, breaking and entering, and using a motor vehicle without permission.

All efforts by counsel to discredit Shipman by reference to his status as a juvenile probationer were rebuffed by objections of the prosecutor which were sustained by the court. Two weeks prior to trial and on two occasions before testimony was taken at trial, counsel unsuccessfully moved for production of Shipman's juvenile records.

has been mooted by the passage of Public Act 77 255, effective October 1, 1977, which enactment guarantees to the parties in any civil or

criminal jury trial the right to question each prospective juror outside the presence of the other prospective jurors.

During cross-examination, questions relating to Shipman's probation were objected to and sustained, including the following:

"Q. Mr. Shipman, are you presently under any type of probation?

MR. MACO (the prosecutor): Objection.

THE COURT: Sustained.

MR. MANDANICI (defense counsel): May I be able to address the Court out of the presence of the jury?

THE COURT: I sustained the State's objection. You may proceed."

(Tr. pp. 75–76)

Later when counsel continued to press the point, the following colloquy occurred:

"THE COURT: Counselor, I think I ruled on that.

MR. MACO: Objection.

THE COURT: I sustained the objection.

MR. MANDANICI: May I discuss this, outside the presence of the jury?

THE COURT: I sustained the objection.

MR. MANDANICI: *Davis v. Alaska*, Supreme Court case says—

THE COURT: I sustained the objection. Nothing further needs to be said on that point."

(Tr. pp. 76–77)

When counsel was afforded an opportunity to be heard in support of his position, he carefully and fully explained that Shipman's probationary status was relevant not only to impeach the general credibility of the witness but also to demonstrate possible prejudice and bias because "the prosecutor made an arrangement with Mr. Shipman, that he would not have his probation violated—similar to the facts of *Davis v. Alaska*." (e. g., Tr. pp. 45, 66). In addition, he quoted at length from *Davis v. Alaska*, 415 U.S.

308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), specifically calling the trial judge's attention (Tr. pp. 7–8) to the Supreme Court's language which was precisely applicable:

One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. *Id.* at 316, 94 S.Ct. at 1110.

\* \* \* \* \* \*

In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness. *Id.* at 319, 94 S.Ct. at 1112.

Despite counsel's compelling argument and citation of controlling law, the state judge limited cross-examination solely to Shipman's adult record, apparently adopting the prosecutor's rather astonishing contention that the *Davis* decision is not binding upon Connecticut trial courts until the Connecticut Supreme Court issues a comparable ruling.[2]

---

2. The prosecutor contended that if the court complied with the Supreme Court's ruling in *Davis,* it would in effect be declaring unconstitutional Conn.Gen.Stat. § 17–73 which provides in part:

The disposition of any child . . . shall be inadmissible as evidence in any criminal proceedings against such child.

In the instant case, there was of course no criminal proceeding pending against Shipman; rather he was a witness called by the State in support of its case against Thergood. Moreover, the Connecticut statute was similar to Alaska Stat. § 47.10.080(g) which the Supreme Court had under consideration in the *Davis* case. 415 U.S. at 311 n. 2, 94 S.Ct. 1105.

## III

■ At the hearing before this Court, respondent correctly conceded that the state court committed an error of constitutional magnitude when it sustained the objection to the question, "Mr. Shipman, are you presently under any type of probation?" *Davis v. Alaska,* supra; see also *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Gordon v. United States,* 344 U.S. 414, 421–422, 73 S.Ct. 369, 97 L.Ed. 447 (1953); *Annunziato v. Manson,* 566 F.2d 410, 412 (2 Cir. 1977) *United States v. Blackwood,* 456 F.2d 526, 530 (2 Cir.), cert. denied, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972). Nevertheless, the respondent asserts that habeas relief is not warranted. First, he urges that defense counsel's failure to take an exception to the state judge's erroneous ruling, a prerequisite for appellate review of evidentiary trial rulings under Connecticut practice, *State v. Evans,* 165 Conn. 61, 65–66, 327 A.2d 576 (1973), constitutes a procedural default which precludes federal habeas corpus review under the principles of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 592 (1977). In *Wainwright,* the Supreme Court held that a petitioner's failure to make a timely objection under Florida's "contemporaneous objection" rule to the admission of his inculpatory statements, absent a showing of cause and actual prejudice, bars collateral review of his *Miranda* claims. The primary purpose of the Connecticut practice rule, which *Wainwright* mandates must be given "respect" in the interests of federal-state comity, 433 U.S. at 87, 97 S.Ct. 2497, is to alert the trial judge "to claims of error while there is still opportunity for correction . . . ." *State v. Gerak,* 169 Conn. 309, 363 A.2d 114 (1975); see also *Allen v. County Court, Ulster County,* 568 F.2d 998, 1004 (2 Cir. 1977) (the *Wainwright* standard for procedural defaults recognizes "the advantages that flow from informing a trial judge of the possibility of constitutional error at a time when action can be taken to correct it. 433 U.S. at 88, 97 S.Ct. at 2507.")

However, the respondent's reliance on the *Wainwright* rationale is misplaced. The constitutional claims advanced in this habeas proceeding are substantially, if not exactly, the same as those previously pressed before the state trial and appellate courts. While it is true the petitioner did not use the precise term "exception" in response to the court's adverse ruling on the question in issue here, his request to be heard outside the presence of the jury after the court ruled certainly connoted an objection to that ruling. Moreover, he took the requisite exception to a related question which followed.[3] Finally, as noted hereinbefore, his federal legal contentions were specifically raised and rejected on several occasions in the trial court. Indeed, at one point when counsel persisted in his attempt to obtain the court's compliance with the *Davis* decision, the judge commented: "Counselor, if and when your client is found guilty, you may take an appeal." (Tr. p. 11).

On direct appeal to the Appellate Session of the Superior Court, the court recognized that the objection to the question concerning Shipman's probationary status "was sustained for no apparent reason," but declined to go further, noting that the petitioner had failed to comply with the rules governing the preservation of claims of error for appellate review. 33 Conn.Sup. at 605, 363 A.2d at 1124. Although the opinion did not explicitly consider the constitutional propriety of the question addressed

When defense counsel argued that state trial courts are bound by decisions of the Supreme Court of the United States, the judge replied that a "lower court should not attempt to determine the constitutionality of a statute, it should be decided up on a higher level." (Tr. p. 10).

3. "Q. Mr. Shipman, have you ever violated any type of probation?

MR. MACO: Objection.
THE COURT: Sustained.
MR. MANDANICI: May I address the Court?
THE COURT: I sustained the objection.
MR. MANDANICI: May I have an exception, your honor?
THE COURT: Exception may be noted.

to Shipman, it appears to have implicitly upheld the trial court's ruling. Were it otherwise, the appellate court surely would have granted relief, despite the lack of technical objection, on the ground that the petitioner's claim had been raised and decided in the trial court and involved an error of constitutional dimension which affected the fundamental fairness of his trial. See *State v. Evans,* supra, 165 Conn. at 66–70, 327 A.2d 576; *State v. Rafanello,* 151 Conn. 453, 456, 199 A.2d 13 (1964). The petitioner's attempt to present the constitutional issue to the Connecticut Supreme Court failed when that court denied his Petition for Certification for Review.

Thus, since it is evident that the Connecticut courts have had ample and fair opportunity to consider the constitutional contentions sought to be vindicated in the case at bar, the petitioner has not forfeited his right to federal habeas relief. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Allen v. County Court, Ulster County,* supra at 1003; *Fielding v. LeFevre,* 548 F.2d 1102, 1106 (2 Cir. 1977); cf. *United States ex rel. Graham v. Mancusi,* 457 F.2d 463, 468 (2 Cir. 1972).

■ Second, the respondent contends that the cross-examination that was permitted by the state judge was adequate to develop the issue of Shipman's possible bias and, therefore, the restrictions placed upon the petitioner's right to cross-examine Shipman was harmless error. Cf. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court disagrees. The Supreme Court has consistently held that where there has been a denial of the constitutional right of confrontation under the Sixth and Fourteenth Amendments, the accused need not demonstrate he was prejudiced thereby. See, e. g., *Davis v. Alaska,* supra, 415 U.S. at 318, 94 S.Ct. 1105; *Brookhart v. Janis,* supra, 384 U.S. at 3, 86 S.Ct. 1245; *Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 77, 75 L.Ed. 736 (1931).

Moreover, a review of the trial record reveals that, in addition to the error made with respect to Shipman's probationary status, the state judge unduly limited the scope of cross-examination in several other critical areas which would have reflected on the witness' biases and ulterior motives for testifying.

■ On direct examination Shipman testified to his place of residence as of December 20, 1974, the date of the attack upon Mrs. Wilson. (Tr. p. 56). A short time later, in response to the prosecutor's question, he stated he was "serving time." (Tr. p. 59). On cross-examination the witness was asked "Where are you now living, Sir?" The prosecutor objected, commenting "It's immaterial and irrelevant, where he is living now." Despite defense counsel's perfectly proper explanation of the purpose of the question that "I'd like to ask him where he is now living. That question has not been asked," the court sustained the prosecutor's objection. (Tr. p. 71). Since the question "was an essential step in identifying the witness with his environment, to which cross-examination may always be directed," *Alford v. United States,* supra, 282 U.S. at 693, 51 S.Ct. at 220, the ruling was constitutionally erroneous. See *Smith v. Illinois,* 390 U.S. 129, 131–132, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968).

■ Another error of constitutional magnitude occurred during the course of the petitioner's presentation of evidence. After Shipman denied he had received any promises of prosecutorial aid in return for his testimony, the petitioner attempted to show that certified copies of Shipman's official court files indicated that "charges were dropped" and that such evidence was relevant "to reveal whether in actuality, any bargaining had gone on between the prosecutor and the witness; deals made for the testimony of the witness." Upon the prosecutor's objection, the court admonished defense counsel to "never mind that plea bargaining" and instructed that the "only thing you can show, to attack the credibility of a witness, is a conviction that's rendered by the Court. A final conviction, nothing else." (Tr. pp. 65–66). The ruling was of course plain error. See, e. g., *Annunziato v. Manson,* supra; *United States v. Harris,* 501

F.2d 1 (9 Cir. 1974); cf. *Gordon v. United States,* 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953).

## IV

The Court recognizes that as a general rule the extent of cross-examination is within the sound discretion of the trial court. *Alford v. United States,* supra, 282 U.S. at 694, 51 S.Ct. 77. Here, however, the right of cross-examination was substantially impaired by the improper and severe restraints imposed upon defense counsel by the state court. Thus, as in *Davis v. Alaska,* the petitioner was deprived of his constitutional right to make a record before the jury that the prosecution's key witness "might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." 415 U.S. at 318, 94 S.Ct. at 1111.

Accordingly, it is ORDERED that the conviction of the petitioner be and the same hereby is set aside and vacated. The state shall have 30 days from the entry of judgment in this action to accord the petitioner a new trial if it should decide to do so.