UNITED STATES of America,
Plaintiff-Appellee,

v.

Cecil K. NICKELL, Defendant-Appellant.

No. 76–2157.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 7, 1976.
Decided March 28, 1977.

Bernard J. Gilday, Jr., Gilday, Jung & Gilday, Cincinnati, Ohio, Frank E. Haddad, Jr., Louisville, Ky., for defendant-appellant.

William W. Milligan, U. S. Atty., Anthony W. Nyktas, David E. Melcher, Cincinnati, Ohio, for plaintiff-appellee.

Before EDWARDS, McCREE and ENGEL, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant was convicted of aiding and abetting in unlawful entry of a bank, in violation of 18 U.S.C. §§ 2113(a), 2(a) (1970). After a jury trial in the United States District Court for the Southern District of Ohio, he was found guilty and sentenced to 15 years. The appellate issues principally concern claims that the prosecutor prejudiced the trial by improper questions or comments. Appellant also argues several other issues, including that a government rebuttal witness gave false testimony and that the government failed to comply with the Jencks Act.

The underlying facts of the crime were established beyond peradventure of a doubt. The factual issue for the jury was whether or not appellant was a participant. The two would-be bank robbers, Roberts and Green, broke into the bank in question and were arrested in the bank when a silent alarm went off. According to the testimony of Roberts, one of the burglars, appellant was driving the proposed getaway car but failed to respond to their urgent CB radio request to be picked up. Appellant Nickell and the other burglar, Green, however, testified that Nickell had no part in the robbery scheme, and Nickell presented an alibi defense for the evening in question.

The government's corroboration of Roberts' testimony consisted of records of phone calls between appellant's phone and that of Roberts, and other admitted associations, including appellant's presence with both bank robbers at the scene of an accident two days before the robbery. All of these associations were within days or hours of the bank robbery attempt and hence somewhat suggestive of a relationship thereto. But none of them necessarily settled the conflict between the testimony of the two actual bank burglars. Green, the other burglar, testified that he and Roberts were at Nickell's apartment on September 15, 1974—the date of the attempted burglary—but Nickell was not present on the scene and had no part in it. He testified that the pick-up man was a black man whose name he could not remember.

Appellant presented three alibi witnesses whose testimony, if believed, would have placed appellant in his own apartment at the time of the bank burglary attempt. In various ways the government's cross-examination and rebuttal evidence tended to contradict or throw doubt on the credibility of their stories.

Appellant does not dispute that there was sufficient evidence to support the jury's finding of guilt. He does, however, assert that the claimed errors in the trial prejudiced his case and demands a new trial. Because appellant's guilt rests primarily upon one witness who is also an accomplice, we approach his claims of prejudicial error with more than normal concern.

I. PROSECUTORIAL ABUSE

Illustrative of appellant's complaint in relation to this issue are the first five examples set out in appellant's brief:

During the testimony of the prosecution's witness, federal prisoner James

Roberts who had already been convicted of the bank burglary at issue, . . . the prosecution gratuitously commented,

Q. That's kind of an interesting pasttime looking at banks.

Mr. Gilday: Judge, I object.

The Court: Sustained. The jury will please disregard the comment.

The defense objection was sustained.

At another point, the prosecution again gratuitously remarked to the witness that it's "a good idea not to spend too much time in a bank; is that right?" Immediately, the defense objected and the Court sustained the objection.

At yet another point in the testimony of this same witness, the prosecution gratuitously questioned the witness about the relative merits of leaving no fingerprints.

Q. Now, all these tools that you have here and those tanks, et cetera and this torch head, did anybody touch these with their bare hands?

A. Definitely not.

Q. That's not a good idea, is it?

Mr. Gilday: Objection.

The Court: Sustained.

The defense objection was sustained.

These repeated comments by the prosecution were objectionable because they were irrelevant to the inquiry at trial, whether or not the Defendant had participated in the alleged burglary. Finally, still during the prosecution's questioning of the same witness, the Court *sua sponte* cautioned the prosecution.

The Court: Again, what is the relevancy of this? What is the relevancy to this case? There is an admission that he was there and what happened. Why all the detail?

Mr. Winkler: I will speed it up, your Honor.

Finally, during the testimony of the same witness Roberts, the prosecution attempted to overrun repeated defense objections and even Court rulings to improperly buttress the testimony of this prosecution witness.

Q. Now, Mr. Roberts, have you given this testimony freely and voluntarily?

Mr. Gilday: Judge, I object.

The Court: Sustained, at this point.

Q. Have I promised you anything in return for your testimony?

Mr. Gilday: Again I object.

The Court: Sustained. The jury will please disregard the testimony.

Q. Have you told the truth?

Mr. Gilday: Again I object.

The Court: Same ruling.

From these examples and from review of the entire transcript of this trial, we believe that appellant's complaints about prosecutorial abuse have at least some merit. The record shows that the prosecutor was rarely able to let any witness' testimony go into the record without an effort on his own part to emphasize or to discredit it. None of his comment was such as to invade the constitutional rights of the appellant, and for the most part it would have been appropriate enough had he reserved it for the prosecutorial argument. It was, however, improperly interposed throughout the trial in a manner which cumulatively would have represented prejudicial error if it had gone unchecked or unrebuked.

Significantly, however, this record shows the contrary. The trial took place before Judge Timothy Hogan, an experienced trial judge in the Southern District of Ohio. As illustrated in the examples quoted above, at every defense objection—and sometimes without awaiting such—Judge Hogan interposed a ruling in defendant's favor and often an admonition to the jury. We can

think of no better form of correction of an overzealous prosecutor than the immediate and firm response of the trial judge. However eagerly the prosecutor sought to curry favor with the jury by seeking to color the evidence with his own observations, he was calmly checked and rebuffed in every important instance by adverse rulings and admonitions from the bench. The totality of this record discloses that, whatever his intentions, the prosecutor did not succeed in achieving any unfair advantage.

We find no judicial error in the District Judge's rulings and no prosecutorial abuse which, after Judge Hogan's rulings, resulted in any unfair advantage for the government's case.

## II. PERJURED TESTIMONY CLAIM

■ Appellant asserts entitlement to a new trial because a rebuttal witness, whose testimony contradicted a statement made by one of appellant's alibi witnesses, told a lie. Appellant claims that the lie served to cast doubt upon the alibi witness.

On cross-examination the witness, Mrs. Dils, denied that she had "lived in a residence with [her] daughter Gloria and with [the alibi witness] Bob Sauer." The question did not bear directly upon Sauer's previous alibi testimony and was not pursued. After the trial two affidavits were presented in which the declarants told of seeing Mrs. Dils in the Sauer home. Mrs. Dils was never asked at trial whether or not she had ever been in the Sauer residence, nor was the ambiguous phrase "lived . . . with . . . Sauer" ever clarified by the cross-examiner. Accepting the affidavits at face value, they by no means support the suggestion which we believe we are meant to derive from appellant's brief, that this elderly grandmother committed perjury by denying a previously existing illicit relationship with witness Sauer.

Appellant was clearly not entitled to a new trial on this ground. See Ashe v.

United States, 288 F.2d 725, 733 (6th Cir. 1961).

## III. THE JENCKS ACT ISSUE

■ Appellant claims prejudicial error also in the fact that the District Judge refused his motion to be allowed to inspect all of the "reports" of an FBI Agent who was a witness in the case. He asserts in effect that the Jencks Act required that on demand he be allowed to see the reports, or in the alternative that the District Judge screen the reports in camera to determine whether they should be turned over as "statements" under the Jencks Act. We do not find these requirements in the Jencks Act.

The Jencks Act defines "statement" as follows:

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e) (1970).

The "statement" referred to above is a statement of a witness whose direct testimony is presented in a criminal trial, which statement had been previously recorded and approved or adopted by the witness. Here it is undisputed that the witness statements taken by Agent Williams had been previously made available to appellant's counsel for purposes of cross-examination of other witnesses.

The question posed here, however, is not so easily answered. Agent Williams' direct testimony at trial bore only upon the fact (as claimed by him) that appellant's witness Green, on being arrested, gave a false name. Appellant does not dispute that the government furnished the "statement" which Agent Williams took from Green. The dispute before this court pertains to whether or not under subsection (b)[1] of the Jencks Act appellant must be furnished all of Agent Williams' case reports, or under subsection (c)[2] the court must require production of such reports for screening as to their relevance to the direct testimony of the agent. The breadth of appellant's claim is clearly set forth in the following statement to the District Judge on the part of one of appellant's counsel, Mr. Haddad: "Well, I don't know. We think that anything that this witness may have submitted, committed to writing would be discoverable once he is called to the stand."

■ We do not find such broad requirements in the Jencks Act or in any of the cases cited to us by appellant. The purpose of the Jencks Act itself was to restrict a defendant's right to any general explora-

tion of the government's files[3]—a right Congress feared it perceived in *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). *See Goldberg v. United States*, 425 U.S. 94, 104, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976); *Palermo v. United States*, 360 U.S. 343, 345–50, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959).

■ Finding the Jencks Act to be inapplicable here is not the end of the inquiry, however. We recognize that the Supreme Court has repeatedly upheld the trial court's "inherent power" to require production of all relevant facts in a criminal trial. In *United States v. Nobles* the Court said:

Decisions of this Court repeatedly have recognized the federal judiciary's inherent power to require the prosecution to produce the previously recorded statements of its witnesses so that the defense may get the full benefit of cross-examination and the truth-finding process may be enhanced. See, *e. g., Jencks v. United States*, 353 U.S. 657 [, 77 S.Ct. 1007, 1 L.Ed.2d 1103] (1957); *Gordon v. United States*, 344 U.S. 414 [, 73 S.Ct. 369, 97 L.Ed. 447] (1953); *Goldman v. United States*, 316 U.S. 129 [, 62 S.Ct. 993, 86

1. (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b) (1970).

2. (c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant

and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

18 U.S.C. § 3500(c) (1970).

3. (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a) (1970).

L.Ed. 1322] (1942); *Palermo v. United States*, 360 U.S. 343, 361 [, 79 S.Ct. 1217, 3 L.Ed.2d 1287] (1959) (Brennan, J., concurring in result).

*United States v. Nobles*, 422 U.S. 225, 231, 95 S.Ct. 2160, 2166, 45 L.Ed.2d 141 (1975). (Footnote omitted.)

In these cases, and all of the cases relied upon by appellant, there has, however, been some foundation[4] laid for production of the material sought which indicated the existence of a prior "statement" relevant to the issues at trial as to which the witness had testified. *See Goldberg v. United States, supra; United States v. Chitwood*, 457 F.2d 676, 678 (6th Cir.), *cert. denied*, 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972); *United States v. Conder*, 423 F.2d 904, 911 (6th Cir.), *cert. denied*, 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970).

Frequently the dispute needing resolution was whether or not the witness had adopted or approved the statement within the meaning of the Jencks Act. *See Goldberg v. United States, supra*, 425 U.S. at 110, 96 S.Ct. 1338; *Campbell v. United States*, 373 U.S. 487, 492–93, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); *United States v. Chitwood, supra* at 678.

Here, as previously noted, Agent Williams' recordation of witness Green's statement was furnished under the Jencks Act. This represents compliance with the thrust of the Jencks Act and most of the cases cited to us. But because Agent Williams became a witness as to what Green said, appellant now seeks discovery "of anything that this witness may have . . . committed to writing . . . ." Our endorsement of this broad right would require either a wholesale turnover of FBI files to any defendant on demand or, at a minimum, that the trial judge examine for relevance and materiality all of the reports filed by any government agent who took the witness stand. The first of these alternatives would have the potentiality for placing in the hands of a person (or persons) charged with crime much confidential government information which had no bearing at all upon the issue of guilt or innocence at the trial involved. Routine judicial screening, however, would pose no such problem and might on occasion contribute to a more just result. But it surely would represent an additional substantial burden to our overburdened federal trial judges and further delay the trial of criminal cases. In the face of clear Congressional opposition to such "rummaging" of the FBI files as was expressed in the Jencks Act, and in the absence of any clear affirmative mandate from the Supreme Court, we decline appellant's invitation to adopt such a broad (and necessarily unilateral) discovery rule.

In this case an experienced District Judge found no reason to require production of the FBI reports for either turnover or screening.

The record before him disclosed no basis for belief that a Jencks Act "statement" existed other than those already furnished to defense counsel. Additionally, the District Judge had before him no showing of relevance or materiality of any evidence contained in Agent Williams' "reports." These facts represent decisive distinctions between this case and those relied upon by Judge McCree's dissent. The question of routine trial producibility of FBI files and reports other than witness statements "written . . ., signed, or otherwise adopted or approved by him" was decided in the negative in *Palermo v. United States*, 360 U.S. 343, 349–51, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287 (1959). *Palermo* has been frequently discussed and cited by the Supreme Court, but never overruled. *See Campbell*

---

4. We employ the word "foundation" in the sense it was used by the Court in *Jencks v. United States*, 353 U.S. 657, 666, 77 S.Ct. 1007, 1012, 1 L.Ed.2d 1103 (1957):

Both the trial court and the Court of Appeals erred. We hold that the petitioner was not required to lay a preliminary foundation of inconsistency, because a sufficient foundation was established by the testimony of Matusow and Ford that their reports were of the events and activities related in their testimony.

*v. United States*, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961) [*Campbell I*]; *Campbell v. United States*, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963) [*Campbell II*]; *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).

We therefore hold that where the District Judge has discovered no foundation for either turnover or judicial screening of FBI files, and the appellate record discloses none except the unsupported demand of the defendant, the District Judge's refusal to order either turnover or screening is not an abuse of judicial discretion.

The remaining three of appellant's stated issues do not require discussion. We have examined them against the record of this case and find them without merit.

The judgment of the District Court is affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. I disagree with that part of the majority opinion that suggests that statements of law enforcement agents who testify at trial are not subject to the provisions of the Jencks Act. The Act permits a defendant to inspect the authenticated or adopted statement of any government witness who has testified. A witness' statement is ordinarily an account of relevant information known to the witness and communicated to government agents during the course of their investigation. However, law enforcement agents themselves also often acquire information about offenses and they are often called to testify about their knowledge. Their information is not always recorded in the same form as is that furnished by other witnesses. The agents instead may include their information in investigative reports that also include much evaluation and discussion of prosecution strategy. Nevertheless, a defendant is entitled under the Jencks Act to any part of an investigative report that is a statement of an agent's knowledge of facts, which if recounted by any other witness and recorded by the agent would be available to the defendant under the Jencks Act.

Such statements, like the statements of other witnesses, should be ordered produced if they relate to the subject matter of the agent's testimony. See *United States v. Johnson*, 521 F.2d 1318 (9th Cir. 1975); *Lewis v. United States*, 340 F.2d 678, 682 (8th Cir. 1965); *United States v. Bell*, 457 F.2d 1231, 1235 (5th Cir. 1972).

If the government claims that any document ordered produced for inspection contains more than the statement of a witness or does not relate to the subject matter of his testimony, the district court must examine the material and excise those portions that are not available to the defendant under the Act. The Act requires this procedure even if the defendant's request for inspection includes writings some of which are obviously not related to the testimony given by the witness or include evaluative or tactical notations. See, *e. g.*, *United States v. Mason*, 173 U.S.App.D.C. 173, 523 F.2d 1122 (1975). And the court may not delegate to the government its duty to determine whether or not the requested material is available for inspection by the defendant.

I share the concern of the majority opinion for the workload of overburdened district judges, but I would not permit this consideration to cause us to overlook the clear mandate of the statute. I would remand to permit the district court to make the required inspection and determination. See *Goldberg v. United States*, 425 U.S. 94, 111, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).