**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joel H. DARK, Defendant-Appellant.**

No. 78–5237.

United States Court of Appeals, Sixth Circuit.

Argued April 10, 1979.

Decided May 4, 1979.

---

Walter S. Clark, Phyllis L. Bateman, Nashville, Tenn., for defendant-appellant.

Hal D. Hardin, U. S. Atty., Richard L. Windsor, Asst. U. S. Atty., Nashville, Tenn., for plaintiff-appellee.

Before ENGEL and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

Appellant Dark was convicted of two counts of willfully failing to file income tax returns, in violation of 26 U.S.C. § 7203 (1976), after a jury trial in the United States District Court for the Middle District of Tennessee. He was sentenced to five months' imprisonment on count one and to one year's imprisonment on count two, the latter sentence suspended in favor of three years' probation.

The government's evidence was plainly sufficient to support the verdict. During 1973 and 1974, Dark was self-employed as a certified public accountant, he taught elementary accounting at Tennessee State University in Nashville, and he attended law school at night. His total receipts on accounts receivable from his accounting practice amounted to $36,331.10 in 1973 and $40,779.22 in 1974. In 1973 he received a salary of $5,420 from Tennessee State. He failed to file income tax returns for either year, despite the fact that he had been specifically warned by the Internal Revenue Service of his obligation under the law to file timely returns. Dark had failed to file his returns for the years 1967–1971 until March 1973, when he learned that he was under investigation by the IRS. At that time, Dark assured the IRS that he would comply with all filing requirements in the future.

Dark's defense was that his failure to file had not been "willful." He testified that his financial books and records were simply "not in shape to file a tax return" on the respective due dates, principally because of the complicated and cumbersome nature of his personal accounting system, and that the pressures of his accounting practice and legal studies had distracted him from properly maintaining his books. The jury deliberated only five minutes before returning its verdict of guilty on both counts.

■ Dark raises numerous claims of error on appeal, most of which are wholly without merit. He contends that the testimony of certain witnesses subpoenaed by the government should have been excluded at trial because the Assistant United States Attorney had instructed the Marshal not to place the returned subpoenas in the case file in the district court clerk's office, thereby preventing defense counsel from looking at the case file to find out who was going to testify for the government. The short answer to this claim is that defense counsel was not entitled to know, in advance of trial, who was going to testify for the government. *United States v. Conder,* 423 F.2d 904, 910 (6th Cir.), *cert. denied,* 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970).

■ Dark contends that the district judge committed reversible error during jury selection by telling the panel, in the course of explaining the presumption of innocence and burden of proof in a criminal case, that "Neither side has the edge." Read in context, the remark was apparently calculated to impress upon the prospective jurors that both parties in a criminal case come before the court with equal dignity and that neither should be arbitrarily favored out of prejudice for or against the government or defendants as a class. While perhaps better left unsaid, the remark could not have confused the jury, especially in light of the district judge's more than adequate explanation of the defendant's presumption of innocence and the government's heavy burden of proof in his other comments to the panel during jury selection and in his instructions at the close of the trial.

■ Dark also argues that the trial judge erred in refusing to order the government to turn over to defense counsel, as "statements" under the Jencks Act, the contents of IRS Special Agent Hollingsworth's case file after Hollingsworth's testimony at trial, without at least inspecting the file *in camera* to determine whether it contained any Jencks material. Agent Hollingsworth's written case reports are not his "statements" under 18 U.S.C. § 3500(e), and the trial court was under no obligation to examine the file *in camera,* since there was "no basis for belief that a Jencks Act 'statement' existed other than those already furnished defense counsel." *United States v. Nickell,* 552 F.2d 684, 687–90 (6th Cir. 1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2233, 56 L.Ed.2d 402 (1978).

Dark's two remaining claims of error are more troublesome. Both involve actions of the trial court, which, Dark argues, unfairly hampered the presentation of his defense.

■ Dark sought to introduce in evidence some of his personal financial records in an effort to corroborate his claim that his personal record-keeping system was so compli-

cated that it would have been difficult, if not impossible, to prepare accurate tax returns by the dates required by law. The trial judge ruled that the records were irrelevant and refused to admit them. We think this was error. The records were plainly relevant to Dark's defense, lame though it might have been.

The other incident occurred during the prosecutor's cross-examination of Dark. Dark testified, "I do not think I could have done [the 1973 and 1974 tax returns] under the circumstances under which I was laboring. On the due date my books were not in shape to file a tax return." At that point, the trial judge interrupted to ask the following question: "Well, the reason your books were not in shape is that you elected to spend time making money off somebody else and not keep your own books up, is that not correct?"

This Court has only recently had occasion to observe that "potential prejudice lurks behind every intrusion into a trial made by a presiding judge" and that, when such intrusion occurs, the judge must "sedulously avoid all appearances of advocacy as to those questions which are ultimately to be submitted to the jury." *United States v. Hickman,* 592 F.2d 931, 933 (6th Cir. 1979). The question propounded by the trial judge here came dangerously close to violating this principle, for it could have created the impression in the minds of the jurors that the trial judge was unsympathetic to Dark's defense, a matter which was for the jury, and the jury alone, to evaluate.

In light of the overwhelming evidence of Dark's guilt, however, we do not believe that either the erroneous exclusion of Dark's financial records or the trial judge's isolated intrusion into the cross-examination of Dark affected Dark's substantial rights. Rule 52, Fed.R.Crim.P.

Accordingly, it is Ordered that the judgment of conviction be, and hereby is, Affirmed.