772 F.2d 908
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
ERNEST ADAMS, DEFENDANT-APPELLANT.
 84-1409
 United States Court of Appeals, Sixth Circuit.
 8/19/85
 
 E.D.Mich.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: CONTIE, WELLFORD, and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Ernest Adams, appeals his convictions under an indictment charging him with eight separate counts of possessing stolen mail and five separate counts of uttering forged checks in violation of 18 U.S.C. Secs. 1708 and 495, respectively. The jury returned a guilty verdict on all counts, and defendant was sentenced to serve concurrent five year terms for each of the convictions. Defendant challenges the convictions on the basis that he was denied effective assistance of counsel when the trial court denied his motion for a one day continuance following the presentation of an unexpected government witness. For the reasons that follow, we AFFIRM.
 
 I.
 
 2
 On Friday, May 1, 1981, a United States postal vehicle was forcibly entered and had several bundles of mail removed from it, including numerous treasury checks. Significantly, several checks intended for delivery on Northlawn and Cherrylawn Streets in Detroit, Michigan, were among those missing. Thereafter, it was discovered that many of these stolen checks had been deposited in a checking account at the Michigan National Bank in the name of the Willard Exterminating Company. Defendant was the sole signatory on that account.
 
 
 3
 When confronted with this evidence, defendant explained that he had received these checks from customers as a part of his pest control business. He took the checks as payment for services rendered, and returned in cash any excess. As its case in chief, the government presented handwriting experts who testified that defendant had recorded on the back of each check the respective street address and other identifying information of the payee. The driver's license number recorded on each check was found to be false. Finally, these same experts testified that in the case of each check one person, namely Sandra Weatherspoon, had probably been the forging party. Weatherspoon, a co-defendant in the case who pleaded guilty as the result of a plea arrangement, testified that she had forged all of the signatures in question, and was paid by defendant to do so.
 
 
 4
 Ample additional evidence was presented establishing defendant's guilt. Of the thirty-eight treasury checks deposited in defendant's account, all but three were from payees living on Cherrylawn and Northlawn Streets in Detroit. Moreover, at trial, thirteen of the payees from whom defendant claimed to have received the checks testified that they never authorized defendant to possess or negotiate the checks.
 
 II.
 
 5
 Defendant's alleged claim of error arises from the testimony of Weatherspoon. On the morning of trial defense counsel was notified that the government intended to compel her testimony. This had not been previously disclosed, the reason being that the government was concerned over her safety. Along with this notice, the government tendered defense counsel a supplemental witness list, the order compelling Weatherspoon's testimony, her plea agreement, and a 14 page transcript of the guilty plea proceeding.
 
 
 6
 Defense counsel immediately moved for a one day continuance, claiming surprise as well as the need for additional time to prepare, read the tendered documents, and perhaps interview the witness. This was denied by the trial court, which instead instructed counsel that she would be afforded an extended lunch hour in which to prepare. This counsel did, and following direct examination attempted unsuccessfully to impeach Weatherspoon. Defendant now argues that denial of the continuance denied him effective assistance of counsel in that his attorney was not allowed adequately to prepare for this surprise witness.
 
 
 7
 The government points out, however, that defendant had no right to know in advance of trial that Weatherspoon would testify. United States v. Dark, 597 F.2d 1097, 1099 (6th Cir.), cert. denied, 444 U.S. 927 (1979). Whether to grant or deny a continuance is a matter within the sound discretion of the trial court. United States v. Faulkner, 538 F.2d 724, 729 (6th Cir.), cert. denied, 429 U.S. 1023 (1976).
 
 
 8
 Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. See Chambers v. Maroney, 399 U.S. 42, 53-54 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel. Ungar v. Sarafite, 376 U.S. 575, 589 (1964).
 
 
 9
 Morris v. Slappy, 461 U.S. 1, 11-12 (1983).
 
 
 10
 This is not a situation where the trial court, in the face of a justifiable request for delay, unreasonably and arbitrarily called on defense counsel immediately to proceed. Instead, the court granted a recess for counsel to become familiar with the information supplied by the government. The materials were neither extensive nor complicated.
 
 
 11
 Defendant has also failed to establish that he received ineffective assistance of counsel at trial. Even if the trial court had committed error in denying the motion, defendant would still be called upon to demonstrate actual prejudice and ineffectiveness of counsel to justify reversal on the claimed sixth amendment grounds. United States v. Cronic, 104 S. Ct. 2039, 2947-48 and n.31 (1984). No showing of this nature has been made here by Adams. Counsel performed reasonably in light of the very substantial evidence of defendant's guilt. Even without the testimony of Weatherspoon, the evidence was ample that defendant had committed the charged acts and possessed the requisite intent to sustain the convictions. See Strickland v. Washington, 104 S. Ct. 2052 (1984). Defendant has not demonstrated that further possible impeachment of Weatherspoon could have lessened the impact of the strong evidence linking Adams to the indictment offenses.
 
 III.
 
 12
 Defendant has failed to demonstrate an abuse of discretion on the part of the trial court in denying his motion for a continuance, nor has he established ineffective assistance of counsel. We accordingly AFFIRM the judgment of the district court.